Wolf *v.* Department of Highways, Appellant.

Argued April 21, 1966. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*William R. Mosolino,* Assistant Attorney General,
with him *Michael R. Deckman,* Assistant Attorney Gen-
eral, *John R. Rezzolla,* Deputy Attorney General, and
*Walter E. Alessandroni,* Attorney General, for Com-
monwealth, appellant.

*Robert E. Myers,* with him *Gurney B. Ruby, Jr.,* for appellees.

OPINION BY MR. JUSTICE JONES, June 24, 1966:

John E. Wolf and Irene D. Wolf, [Wolf], own a tract of land located on the northerly side of U. S. Route 11—an east-west highway—in Hampden Township, Cumberland County. This land—which had a 200' frontage along Route 11 and extended northward a depth of 400'—was improved with a gasoline service station, a seven-unit motel, an office and Wolf's residence. Access to the Wolf property was by means of a driveway which proceeded from Route 11 along the easterly property line in a northerly direction and then curved westerly into the property.

On and subsequent to September 9, 1958, the Commonwealth, acting through the Department of Highways, in connection with the transformation of Route 11 at a point in front of the Wolf property from a three-lane to a five-lane highway,[1] took certain steps which affected, either directly or indirectly, the Wolf property: (a) it condemned a rectangular portion— 35-37' along Route 11 by 40' in depth—of the southeast corner of the Wolf property; (b) it constructed a concrete curb along the highway for a distance of approximately 70' in front of the gasoline station; (c) at two points along the highway it provided for means of ingress to and egress from the Wolf property; (d) it erected two concrete dividers—sometimes called divisor strips or medial dividers—on the highway within the right of way of the Commonwealth to accommodate westbound traffic desiring to turn south.[2]   Neither

[1] Two lanes were constructed for eastbound traffic, two lanes for westbound and expressway-merging traffic and a middle lane for westbound traffic turning south into the Mechanicsburg Naval Depot.

[2] One concrete divider separated the two eastbound lanes from the middle or fifth lane; that divider—24″ wide and 4 1/2″ high—

that portion of the property *actually taken* nor the curbing constructed along the highway are *directly* at issue on this appeal.

A board of view awarded Wolf $6204—$4800 damages plus $1404 detention damages. On Wolf's appeal to the Court of Common Pleas of Cumberland County, the jury returned a verdict of $23,187.50—$17,500 damages plus $5687.50 detention damages.

At the trial, the trial judge permitted Wolf to introduce testimony as to the presence of the dividers on the highway in front of the property. Wolf presented the plot plan of construction of the Commonwealth, oral testimony as to the effect of the construction of such dividers on traffic in the eastbound lanes desiring to enter Wolf's property and opinion evidence as to the effect on the *after* value of the Wolf property of the diversion of eastbound traffic by reason of the construction and location of the dividers on the highway. To the introduction of such testimony the Commonwealth objected at trial [3] and, after the jury verdict, again raised the question of the admissibility of such testimony in its motion for a new trial.

The court below, considering that the taking of a portion of the Wolf property and the construction of the medial dividers on the highway were integral parts of one and the same transaction, concluded that the fact of such divider construction and the impact of the location of such dividers upon the diversification of eastbound traffic from ready and direct access to the Wolf property were matters properly received in

_____

began several hundred feet east of, and continued approximately 10′ west of, the easterly line of the property. The other concrete divider also separated the two eastbound lanes from the middle or fifth lane; that divider—36″ wide and 1″ high eventually tapering down to highway level—began 95′ west of the easterly line of the property and extended eastwardly beyond the property.

[3] To the introduction of the plan itself the Commonwealth did not object.

evidence and were properly for consideration by the jury as factors in arriving at the *after* value of the property. In reaching its conclusion, the court below, and Wolf, relied, in large measure, upon *McCrady Case,* 399 Pa. 586, 160 A. 2d 715, and *McCoy Bros., Inc. v. Department of Highways,* 416 Pa. 625, 204 A. 2d 915.[4] We cannot agree with the court in its conclusion.

Upon this record certain facts are beyond dispute: (1) the medial dividers were located upon the "right of way" of the Commonwealth and not upon any portion of the Wolf property actually taken; (2) the location of the dividers did not prevent ready access of westbound traffic to the property nor access from the property to the westbound lanes of the highway; (3) upon completion of construction of the highway, means of reasonable ingress to and egress from the property were assured; (4) by reason of the location of the dividers on the highway, eastbound traffic, desiring to proceed to the Wolf property, would have to proceed to a point 1500-1700' east of the property, turn into the westbound lanes from a cross-road and, after proceeding in the westbound lanes, then enter the Wolf property;[5] (5) to eastbound traffic, desiring to enter the Wolf property, the location of the dividers created a situation which did not deny *any* access to the property but did require a circuity of travel to reach a point where access to the property could be effected.

Generally speaking, the issue presented upon this appeal requires an evaluation of the right of an owner of property abutting upon a state highway to ingress to and egress from the property vis-a-vis the right of

---

[4] *McCoy* affirmed an order of the court below *by an equally divided Court. McCoy* must be regarded as dispositive only of the actual litigation therein involved and not as a controlling precedent.

[5] It should be noted that, in the eastbound lanes in the area in which the dividers were located, there was a "Keep Right" sign which warned eastbound traffic not to attempt a left turn at that point into the westbound lanes.

the Commonwealth, acting within the scope of its police powers, to regulate traffic upon the highway in the interest of public safety and the efficient flow of traffic upon the highway. Specifically, the issue poses the question whether the Commonwealth may regulate the direction of traffic on a highway by the location thereon of medial dividers the result of which location is to so divert traffic that access to the property of an owner of property abutting the highway is available by a circuitous, rather than a direct, route of travel without becoming liable for the effect of such diversion of traffic on the *after* value of the abutting owner's property.[6]

In this area of the law certain principles are well settled: (a) the right of access to and from a public highway is a property right of which the owner of property abutting the highway cannot be deprived without just compensation. In *Breinig v. Allegheny County*, 332 Pa. 474, 2 A. 2d 842, we said: "Where land is taken or purchased for highways, the abutting owner retains, as an incident to ownership of the remainder of his land, the right of access, or of ingress and egress. This right cannot be taken from him unless compensation is made therefor under the law. It is a property right, protected by the Constitution" (at p. 480). Such right of access does not entitle the abutting owner to access at *all* points along the highway; it does entitle him to access, by reasonable and convenient means, to his property from the highway and from his property to the highway.[7] See: *McCrady Case*, 399 Pa. 586, 160 A. 2d 715; *Laubach & Sons v. Easton*, 347 Pa. 542,

---

[6] In the posture of this case, Wolf claims that, because of the diversion of traffic in two of the five lanes of the highway, the commercial activities situated on their property have suffered a loss of business which must be considered as an element and factor in ascertaining the *after* value of the property.

[7] It has been recently stated that an abutting owner has "the right to get into the street upon which [his] property abuts and

545, 32 A. 2d 881; *McCargo v. Evanson*, 188 Pa. Superior Ct. 465, 473, 149 A. 2d 588; (b) the Commonwealth, acting through the Secretary of Highways, is empowered "to make reasonable rules and regulations governing the use of all State highways, and, by the construction of curbs, *divisor strips*, painted lines or signs, may control the direction of the flow of traffic thereon. . . ." (Emphasis supplied) (Act of June 1, 1945, P. L. 1242, §420, 36 P.S. §670-420); (c) in the regulation of traffic and in the interest of public safety, the Commonwealth, acting within the scope of its police powers, may make reasonable rules and regulations which may dilute or diminish the rights of abutting property owners without liability to respond in damages. The theory is that, in such field, the interest of the abutting property owner must be subordinated to the interest of the public at large. In *Breinig*, supra (at pp. 482, 483, 484), this Court stated: "The absolute prohibition of driveways to an abutting owner's land which fronts on a single thoroughfare, and which cannot be reached by any other means, is unlawful and will not be sustained. But the public authorities have the undoubted right to regulate the manner of the use of driveways by adopting such rules and regulations, in the interest of public safety, as will accord some measure of access and yet permit public travel with a minimum of danger. The rules and regulations must be reasonable, striking a balance between the public and the private interest. The abutter cannot make a business of his right of access in derogation of the rights of the traveling public. He is entitled to make only such use of his right of access as is consonant with traffic conditions and police requirements that are reasonable and uniform. . . . And high-

---

from there, in a reasonable manner, to the general system of public streets.": *Breidert v. Southern Pacific Co.*, 39 Cal. Rptr. 903, 906, 394 P. 2d 719, 722.

ways may be so regulated by them [the Commonwealth and its political subdivisions] as to limit the rights of abutting owners: [citing authorities]. . . . But such acts of regulation, or limitation of rights, under the police powers must be reasonable. They cannot be sustained if they are capricious, arbitrary, or unduly delimit and unreasonably intermeddle with the rights of an abutting property owner. . . . Ordinarily the determination of this question is a legislative or executive matter, and the presumption is established that these officials act lawfully in exercise of their discretion. But it is nevertheless the duty of the judiciary to inquire into that exercise, and if it is found the discretion of these other branches of government has been abused, we interfere immediately to relieve against oppressive and arbitrary action. This happens only when the asserted exercise of the police power is manifestly unreasonable, arbitrary or discriminatory, and the action of the officers patently unreasonable or oppressive."; (d) if the Commonwealth, by virtue of and in the reasonable exercise of its police power, restricts or limits the use of the highway in such manner that there may be a dilution or diminution of the rights of the abutting property owners, save only in regard to reasonable access to and from the highway, the Commonwealth does not become liable to respond in damages for such dilution or diminution: *McCrady Case,* supra, p. 593, and the authorities therein cited; (e) in the absence of statutory authority, the Commonwealth is not liable for *consequential* damages incurred in the construction or reconstruction of highways:[8] *McCrady*

---

[8] However, under the new Eminent Domain Code (Act of June 22, 1964, (Special Sessions), P. L. 84, §612, 26 P.S. §1-612), which is presently inapplicable, condemnors are made liable for damages to property "abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken."

*Case,* supra, at p. 592, and authorities therein cited; *Anderson Appeal,* 408 Pa. 179, 182 A. 2d 514; (f) however, the Commonwealth, acting under the guise of its police power, cannot effect what amounts to a taking of the rights of abutting property owners without providing just compensation; (g) "One fact for consideration in determining such limits [of the police power] is the extent of the diminution [of values incident to property]. When it reaches a certain magnitude, in most if not all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts.:" *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S. Ct. 158, 159.

In the case at bar, the *taking* of a portion of the Wolf property bore no relationship to the construction and location of the medial dividers unlike the situation in *McCrady Case,* supra, where "the *taking* and the *curbing* were both part and parcel of *one* transaction," (at p. 594). Moreover, the construction of this highway did not deprive Wolf of their right to access to the highway and from the highway to their property; after the taking and after the construction of the highway, reasonable means of ingress to the property and egress from the property were fully preserved. *McCrady Case,* supra, upon which Wolf and the court below so heavily relied, presented an entirely different situation. In *McCrady Case,* the Commonwealth, by the installation of high curbing along the highway frontage of the McCrady property, had made exceedingly difficult and, in some instances impossible, any ingress and egress into the property and the property owner had for all intents and purposes been deprived of any reasonable right of access to and from the highway.

What we are confronted with in this case are abutting property owners who complain that, because of the reconstruction of the highway in front of their prop-

erty, and, particularly, because of the placement of the medial dividers in the highway, vehicular traffic proceeding in the two eastbound lanes in order to reach their property will have to proceed 1500 to 1700 feet east of their property, cross over into the westbound lanes and retrace its path to the points of access to their property from the westbound lanes. By reason of such necessitated circuity of travel, Wolf contends that business which might have been reasonably expected and anticipated to be generated from vehicular traffic in the eastbound lanes will be considerably diminished and that such diminution should be considered as an element in determining the *after* value of the property. Upon analysis, Wolf complains not of any loss of access but of a diversion of traffic created by the new highway construction.

Assuming, arguendo, that the placement of these medial dividers on the highway has created a diversion of the eastbound traffic and that such diversion of traffic has necessitated for such vehicular traffic a circuitous, rather than a direct, access to the property which has resulted in a diminution of business for the gasoline station and motel, are such facts relevant in determining the *after* value of the property. In *Johnson's Petition*, 344 Pa. 5, 23 A. 2d 880,[9] the property owner contended that the diversion of traffic arising from the construction of a new highway and consequent loss of business to his restaurant-beer parlor were elements to be considered in determining the *after* value of his property. This Court, noting that it was true "that many who formerly passed on the road

[9] Factually, *Johnson* differs from the instant case. There, the old highway upon which the Johnson property faced remained unchanged. The new highway, which left the old highway at points a mile west and a mile east of the Johnson property, diverted considerable traffic from that portion of the old highway upon which the Johnson property faced.

south of [Johnson's] restaurant now take another route, resulting in loss of custom to [Johnson], this change in travel is due not to the taking of [Johnson's] land but to a change in the road system of that locality whereby the travelers at points one-quarter mile and one mile from [Johnson's] land are given the choice of alternative routes having different attractions"; (p. 9), held that the loss in traffic was due to changes remote from the land taken, that the diversion of traffic was not an element in determining the *after* value of the property and that any loss which resulted was damnum absque injuria. The Court said (at p. 10): "The state owed no duty to [Johnson] to see that travel continued to pass by his door. . . . The owner of land abutting on a highway has no property or other vested right in the continuance of a certain amount of traffic over that highway so long as he is not deprived of ingress or egress. Here the diversion of traffic was not due to the taking of [Johnson's] land, but was occasioned by the laying out of a new road which attracted the public. . . . In any event, the consequences here were too far removed from the taking to form the basis of a claim of legal injury." [10] See also: *Heil v. Allegheny County*, 330 Pa. 449, 456, 199 A. 341; *Babcock Blvd. Land Company Appeal*, 418 Pa. 618, 210 A. 2d 168, cert. den. 382 U.S. 906, 86 S. Ct. 243; *Fecher v. Allegheny County*, 313 Pa. 191, 194, 169 A. 87.

Wolf retained their right of access to and from the highway and a right of ingress to and from their property by reasonable and convenient means. The construction of this highway did not impinge upon that right. The location of the dividers was entirely unrelated to that portion of their property which was actually taken by the Commonwealth, it was under-

---

[10] There was no nexus whatsoever between that portion of the Wolf property taken by the Commonwealth and the location and construction of the medial dividers.

taken by the Secretary of Highways acting under the police power of the Commonwealth and it was not accomplished in either an arbitrary or unreasonable manner. The purpose of the dividers was the enhancement of public safety on the highway and the efficient flow of vehicular traffic. Such diversion of traffic as occurred in the eastbound lanes, even though it resulted in a diminution of Wolf's business, was not an element or factor to be considered in determining the *after* value of the property. The "injury" claimed to have been suffered was not only too remote to form an element of damage but constituted damnum absque injuria.

The basic problem herein presented has arisen in other jurisdictions and the courts in such jurisdictions have arrived at the result reached. See: *Breidert v. Southern Pacific Co.*, 39 Cal. Rptr. 903, 909, 394 P. 2d 716, 725 (1964) ; *LaCroix v. Commonwealth*, 348 Mass. 652, 205 N.E. 2d 228 (1965) ; *Kansas City v. Berkshire Lumber Co.*, 393 S.W. 2d 470 (Mo. 1965) ; *Painter v. Nebraska*, 177 Neb. 905, 131 N.W. 2d 587 (1964) ; *Brady v. Smith*, 139 W. Va. 259, 79 S.E. 2d 851 (1954) ; *Houghs v. Mackie*, 1 Mich. App. 554, 137 N.W. 2d 289 (1965) ; *McHale v. N. Y.*, 278 App. Div. 886, 104 N.Y.S. 2d 981 (1951), aff'd 304 N.Y. 674, 107 N.E. 2d 593 (1952) ; *State of Missouri v. Meier*, 388 S.W. 2d 855, cert. den. 382 U.S. 846 (Mo. 1965) ; *Brock v. State Highway Commission*, 195 Kan. 361, 404 P. 2d 934 (1965) ; *Holman v. State*, 97 Cal. App. 2d 237, 217 P. 2d 448 (1950) ; *People v. Sayig*, 101 Cal. App. 2d 890, 226 P. 2d 702 (1951) ; *Re Easements for Highways, etc. Purposes*, 101 Ohio App. 1, 137 N.E. 2d 595, app. dism'd 164 Ohio St. 402, 131 N.E. 2d 395 (1955) ; *Snow v. N.C. State Highway Commission*, 262 N.C. 169, 136 S.E. 2d 678 (1964) ; *Gene's, Inc. v. Charlotte*, 259 N.C. 118, 129 S.E. 2d 889 (1963) ; *San Antonio v. Easley*, 368 S.W. 2d 683 (1963) ; *State v. Ensley*, 240 Ind.

472, 164 N.E. 2d 342 (1960); *Northern Lights Shopping Center, Inc. v. State of New York*, 20 A.D. 2d 415 (1964); *Nelson v. Iowa State Highway Commission*, 253 Iowa 1248, 115 N.W. 2d 695 (1962); *James v. State*, 88 Idaho 172, 397 P. 2d 766 (1964); 73 A.L.R. 2d 689; *Walker v. State*, 48 Wash. 2d 587, 295 P. 2d 328 (1956); *State Highway Commission v. Central Paving Co.*, 240 Ore. 71, 399 P. 2d 1019 (1965); *Kahin v. Seattle*, 64 Wash. 2d 872, 395 P. 2d 79 (1964).[11] One commentator has aptly stated: ". . . what [the property owner] is losing, in fact, is the benefit—entirely unearned by him—to his land of the commercially exploitable proximity of heavy traffic. Since he has no right to this benefit and has done nothing to create it, he should have little cause to complain at losing it.": Covey, "Frontage Roads; To Compensate or Not to Compensate", 56 Nw. U.L. Rev. 587, 599 (1961).

Recently, in *State of Missouri v. Meier*, 388 S.W. 2d 855, 857 (Nw. 1965), the Supreme Court of Missouri has well evaluated the respective rights of an abutting owner and the State: "An abutting owner's property right to 'access' is better described as the right of ingress and egress to and from his property and the abutting public highway. The right also includes the further right to connect with or reach the system of public highways, which right is also subject to reasonable restrictions under the police power of the State in protecting the public and facilitating traffic. The right does not include the right to travel in any particular direction from one's property or upon any

---

[11] In respect to limited access highways, the situation is different. See: 43 A.L.R. 2d 1072; Cromwell, "Loss of Access to Highways: Different Approaches To the Problem of Compensation". 48 Va. L. Rev. 538 (1962); *People ex rel. Dept. of Public Works v. Logan*, 198 Cal. App. 2d 581, 17 Cal. Rptr. 674; *Creasy v. Lawler*, 8 Pa. D. & C. 2d 535, aff'd 389 Pa. 635, 133 A. 2d 178; *Martin v. Creasy*, 360 U.S. 219, 79 S. Ct. 1034, revsg. *Creasy v. Stevens*, 160 F. Supp. 404.

particular part of the public highway right-of-way be-
cause, after one is upon the highway he has the same
right as all other travelers and the right of travel is a
public right and controlled by the police power of the
State. Nor does the right of ingress or egress to or
from one's property include any right in and to the
existing public traffic on the highway, or any right to
have such traffic pass by one's abutting property. The
reason is that all traffic on public highways is con-
trolled by the police power of the State, and what the
police power may give an abutting property owner in
the way of traffic on the highway it may take away,
and by any such diversion of traffic the State and any
of its agencies are not liable for any decrease of prop-
erty values by reason of such diversion of traffic, be-
cause such damages are 'damnum absque injuria', or
damage without legal injury.

. . . .

"Respondent, as an abutting property owner on
a public highway, does not now *have* and has never had
any other property interest in the public highway other
than a reasonable right of ingress and egress, as stated.
Respondent has never had a property right in the traf-
fic, great or small, on the highway, nor a right to re-
cover damages for a decrease in value of her premises
by reason of the diversion of traffic away from her
property, nor has she had a property right to have the
same amount of traffic pass her property as before or
to have it move in the same direction. Respondent's
property right of access has never extended further
than the right to enter *upon* the highway or to leave
it and have reasonable connection to the public road
system. Once upon the highway, the police power of
the State controlled and respondent and her invitees
were subject to the 'Rules of the Road' as established
. . . under the police power of the State. . . ." (at p.
857).

A study of this record and the applicable case law convinces us that the diversion of traffic caused by these medial dividers with the alleged resultant loss of business is not an element to be considered in determining the *after* value of the Wolf property. To hold otherwise would render the Commonwealth liable for consequences far too remote and speculative and would transform the right of an abutting property owner to reasonable access to the highway into a right not only to such access but to a continuance of the flow of traffic on the highway in front of his property. The evidence received by the court below of which the Commonwealth now complains should not have been received in evidence; its consideration by the jury was erroneous.

Judgment reversed and a new trial awarded.