Truck Terminal Realty Company, a Pennsylvania Corporation *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued February 1, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Benjamin B. Wechsler,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*Leonard M. Mendelson,* with him *Hollinshead and Mendelson,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., May 26, 1978:

This is an appeal by the Commonwealth's Department of Transportation (PennDOT) from an interlocutory order of the Court of Common Pleas, which we have allowed under the authority of Section 501(b) of the Appellate Court Jurisdiction Act of 1970.[1] The court below, in a preliminary ruling on an appeal from a report of a board of viewers pursuant to Section 517 of the Eminent Domain Code (Code)[2], ordered that the effect of the temporary closing of a road due to construction be considered in determining the post-condemnation market value of the property of Truck Terminal Realty Company (Plaintiff), thereby modifying the report, wherein the viewers had found that Plaintiff had suffered no damages. We reverse.

The facts, as stipulated to by the parties, are as follows:

"1. Plaintiff-Appellee, Truck Terminal Realty Company, is the owner of a parcel of real estate situate in Harmar Township and Indiana Township, Allegheny County, Pennsylvania.

"2. Plaintiff's property runs approximately parallel to and approximately 90 ft. east of the required right of way line of Legislative Route 679 (Traffic Route 910). Although the property does not abut on Legislative Route 679, it has access to it over an easement or right of way which traverses an adjacent tract of land which occupies the 90 foot interval between Plaintiff's property and Route 679. Plaintiff's property has no other highway access.

"3. Plaintiff's property sits below the grade of Legislative Route 679.

---

[1] Act of July 31, 1970, P.L. 673, as amended, 17 P.S. §211.501(b)

[2] Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §1-517.

"4. Having determined to widen and improve Route 679, the Commonwealth of Pennsylvania, on November 18, 1974, filed a Declaration of Taking by which it condemned a portion of Plaintiff's easement or right-of-way and raised the grade of the road 4.04 ft. . . . .

" . . . .

"6. Before the construction brought about by the condemnation, Plaintiff's vehicles had access from its property to Traffic Route 28, a major local artery, and Pennsylvania Turnpike Exit 5, by traveling approximately two miles south along Route 679. This access will be the same after construction, except that Legislative Route 679 will be substantially improved with respect to width and grade. However, the construction work necessitated the complete closing for a period of time of Legislative Route 679 south of Plaintiff's easement or right-of-way.

"7. The temporary closing of Route 679 south of Plaintiff's easement or right-of-way required that vehicles and customers coming from and going in that direction travel an additional 14 miles in each direction in order to get to Plaintiff's property.

" . . . .

"11. The Commonwealth concedes that Plaintiff is entitled to compensation for Items (a) the actual taking by eminent domain of a portion of its easement or right-of-way and, (b) the elevation in the grade of the road on which its easement or right-of-way abutted, if in fact Plaintiff's property was damaged thereby. The Commonwealth contends that the Plaintiff is not entitled to compensation for Item (c) the cutting off of access to the road south of the easement or right-of-way during the construction period.

"12. The issue to be resolved is whether the lower court properly held that, upon the trial of the Plain-

tiff's appeal from the Report of the Board of Viewers, the impact upon Plaintiff's property of the physical closing of Route 679 to the south of Plaintiff's right-of-way during the construction period shall be an element to be considered, together with all other proper elements, in determining the fair market value of Plaintiff's property immediately after the condemnation and as affected thereby.''

In reaching its decision, the court below relied upon Section 606 of the Code, 26 P.S. §1-606, which provides:

Effect of condemnation use on after value

In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken. Future damages and general benefits which will affect the entire community beyond the properties directly abutting the property taken shall not be considered in arriving at the after value. Special benefits to the remaining property shall in no event exceed the total damages except in such cases where the condemnor is authorized under existing law, to make special assessments for benefits.

In interpreting the meaning of that section, the court placed heavy emphasis upon the official comments by the Joint State Government Commission, the body that drafted the Code, which state, in part:

The provisions of this section are meant to emphasize that the value of the remaining property after a partial taking, as affected by the condemnation, would be that which a prudent

buyer would pay, recognizing the damages and benefits accruing to the remaining property as they can be interpreted and evaluated at that time. While the ultimate benefits to be derived from improvements within the part taken may be great, the owner of the remaining property may not enjoy them in some cases for several years. In determining the fair market value of the remaining property, consideration should be given to the necessary time discount, inconvenience and other effects of the construction period, vhich might materially affect the price which the condemnee would receive if he were to sell the remaining property to a third party immediately after the day of condemnation, but before completion of the improvement. . . .

The court reasoned that the Statutory Construction Act, 1 Pa. C.S. §1939, permits a court to consult the drafting commission's comments, with the limitation that, in the event of conflict between the statute and the comment, the statute governs. Believing that the comment did not conflict with the statute, the court ruled that the loss allegedly caused by the closing of Route 679 during the construction was precisely the type of loss envisioned by the phrase "necessary time discount, inconvenience, and other effects of the construction period," and that the loss was therefore an element to be considered in determining fair market value under Section 606. We disagree.

The measure of damages payable to an eminent domain condemnee is provided for in Section 602 of the Code, 26 P.S. §1-602, which states, in pertinent part:

Measure of damages

(a) Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immedi-

ately before the condemnation *and as unaffected thereby* and the fair market value of his property interest remaining immediately after such condemnation *and as affected thereby,* and such other damages as are provided in this code. (Emphasis added.)

Section 606 does not augment that measure, and is not a provision for "other damages," within the purview of the last phrase of Section 602(a), but merely states the method of arriving at fair market value of the property remaining to the condemnee after a partial taking. Section 602 defines that measure to be market value "immediately after such condemnation and as affected thereby;" hence, the "damages" which Section 606 requires to be considered in arriving at fair market value can include only those damages "affected by" or flowing from the act of condemnation itself. Thus, clearly Plaintiff is entitled to compensation for any diminution in the value of its property resulting from the taking of part of its easement. However, the damages caused by the closing of Route 679 do not, in our view, result from the condemnation, but rather flow independently from the Commonwealth's proper exercise of its police power in expanding and improving the road.

In *Wolf v. Department of Highways,* 422 Pa. 34, 220 A.2d 868 (1966), our Supreme Court held that where the Commonwealth, as part of a project widening and improving a roadway, condemned property of an abutting landowner, and erected medial barriers which made access to the condemnee's property more difficult for vehicles traveling on the opposite side of the barrier, construction and location of the medial dividers bore no relationship to the taking. Hence, the Court ruled, the damages occasioned by the circuity of travel was not an element to be considered in deter-

mining the post-condemnation value of the property. Here, the closing of the road and consequent rerouting of truck traffic to and from Plaintiff's property would have occurred even had there been no taking of part of Plaintiff's easement. Thus, as was the case in *Wolf,* such damages as may have resulted from the closing of the road, in the form of decrease in market value, did not result from the condemnation itself, but from the construction which commenced once needed land had been acquired. Section 606 does not entitle Plaintiff to have those damages included in the determination of the fair after-taking market value.

If Plaintiff has any right to compensation for damages resulting from access impairment, it is under Section 612 of the Code, 26 P.S. §1-612, which provides:

> Consequential damages
>
> All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

We have interpreted this section of the Code on numerous occasions and have followed the ruling of our Supreme Court in holding that circuity of travel necessitated by the erection of barriers or by the actual rerouting of the highway system does not, of itself, constitute an interference with access. *Hession Condemnation Case,* 430 Pa. 273, 242 A.2d 432 (1968); *Brill v. Department of Transportation,* 22 Pa. Commonwealth Ct. 202, 348 A.2d 451 (1975); *Department of Transportation v. Nod's Incorporated,* 14 Pa. Commonwealth Ct. 192, 321 A.2d 373 (1974); *Department of Transportation v. Kastner,* 13 Pa. Commonwealth Ct. 525, 320 A.2d 146 (1974). These cases cited with ap-

proval the holding of *Wolf, supra,* that an abutting property owner does not have any property interest in a public highway other than a reasonable right of ingress and egress or, in other words, that his right of access is no more than the right of reasonable access to the public road system. Plaintiff argues that the facts of the instant case clearly establish that it has been deprived of *reasonable* access to the public road system, i.e., of *reasonable* ingress and egress. It points out that in all of the cases involving circuity of travel, the greatest amount of additional travel occasioned by the Commonwealth's action was two miles in one direction *(Department of Transportation v. Nod's Incorporated, supra),* whereas here the added one-way distance is 14 miles.

However, in all of those cases the inconvenience occasioned by additional travel was permanent, whereas here the inconvenience is temporary, enduring only as long as is necessary to complete the highway improvements. While we implied in *Nod's* that at some point the circuity of travel occasioned by a highway improvement will be so great as to amount to a denial of reasonable access, we did not imply that the same would apply to a situation of temporary inconvenience. Section 612, by its own terms, provides for compensation to landowners only for *permanent* interference with access. It is well settled that the Commonwealth is not liable to landowners for consequential damages unless liability is expressly imposed upon it by statute. *Condemnation East Berkshire Street,* 20 Pa. Commonwealth Ct. 601, 343 A.2d 67 (1975) ; *Moyer v. Commonwealth,* 183 Pa. Superior Ct. 333, 132 A.2d 902 (1957). Thus, the provisions of Section 612 imposing such liability must be strictly construed. Since that section imposes liability only for permanent interference with access, Plaintiff is not entitled to damages resulting

from temporary interference, nor may these damages be considered in determining the after-condemnation value of his property.[3] This being so, we need not determine whether, had the 14 mile rerouting of traffic been a permanent condition, it would have constituted so severe a circuity of travel as to amount to an interference with access, warranting compensation. Hence, upon trial of this appeal in this case, the Court shall consider, as elements of damage, only the diminution in market value of Plaintiff's property caused by the taking of part of Plaintiff's easement and the damages caused by the change in grade of Route 679.

Accordingly, we

## ORDER

AND Now, this 26th day of May, 1978, the order of the Court of Common Pleas of Allegheny County dated February 24, 1977, modifying the report of the Board of Viewers and directing that the impact of the closing of Legislative Route 679 during construction be considered in determining fair market value of Plaintiff's property after condemnation, is reversed. The Court of Common Pleas of Allegheny County shall not consider the effect of the temporary closing of that road upon the value of Plaintiff's property upon trial of this appeal.

---

[3] We note, without deciding, that even in the absence of Section 612's limitation of damages to permanent interference with access, the recent case law holds that there is no right to damages for temporary interference with access occasioned by road construction. *Meyers v. The District of Columbia*, 17 F.R.D. 216 (1955), even when the interference effectively constitutes a total denial of access. *Beck v. State of New York*, 21 App. Div. 2d 939, 251 N.Y.S. 2d 288 (1964).

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I would affirm on the opinion of the court below.