644 A.2d 1274

**In re De Facto Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Property Owned Legally or Equitably by Scott E. Schaeffer, Individually and d/b/a Scott Schaeffer Auto Center, Auto, Auto Sales, and Amity Realty Incorporated, Located at Route 422 and Monocacy Road, Amity Township, Berks County, PA: Project Consisting of Installation of Medial Barrier on Route 422.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT of TRANSPORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 14, 1994.

Decided May 11, 1994.

Publication Ordered July 14, 1994.

Carl Vaccaro, Asst. Counsel, for appellant.

James A. Cunningham, for appellee.

Before DOYLE and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

The Pennsylvania Department of Transportation (DOT) appeals from an order of the Court of Common Pleas of Berks County (trial court) which dismissed the Commonwealth's preliminary objections to Scott Schaeffer Auto Center's (Schaeffer) petition for appointment of a Board of Viewers and sustained Schaeffer's preliminary objections to the Commonwealth's preliminary objections.[1]

Schaeffer owns property and operates a business at the intersection of Monocacy Road and Route 422, a "T" intersection. In August of 1992, DOT erected a medial barrier on Route 422, eliminating left turns from westbound Route 422 onto Monocacy Road and vice versa and resulting in a detour of approximately 1.2 and 1.3 miles, respectively, for westbound traffic entering and leaving the Schaeffer property.[2]

Schaeffer brought a de facto taking action pursuant to section 612 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–612.[3]

---

**1.** An order dismissing preliminary objections to a Petition for Appointment of Viewers alleging a de facto taking is a final, appealable order. *City of Pittsburgh v. Haffner*, 80 Pa.Commonwealth Ct. 53, 471 A.2d 116 (1984).

**2.** Schaeffer also had a beneficial interest in property on the north side of Route 422, which DOT claims he purchased after the medial barrier was installed. R.R. at 25a, 29a. The existence of this property, which is separated from Schaeffer's other property by the public road which is divided by the medial barrier, does not change our analysis.

**3.** Section 612 of the Eminent Domain Code provides as follows:

DOT filed preliminary objections claiming that the barrier did not interfere with access and so did not amount to a de facto taking. Schaeffer then filed preliminary objections to the Commonwealth's preliminary objections, claiming that the Commonwealth's preliminary objections failed to comply with the Berks County Local Rules of Court. The trial court dismissed DOT's preliminary objections, noting that

> Petitioner has established that potential customers of Petitioner's used car lot related businesses no longer stop and patronize Petitioner and/or are, by the detour, being funneled directly to Petitioner's competitor. Petitioner's witnesses established that Petitioner has suffered an almost fifty-percent loss of used car sales revenue in the first six months after the barrier's installation and a twenty-percent loss in value of his land.

(Trial Court Op. at 1–2.)

On appeal,[4] DOT argues that the trial court erred because the circuity of travel necessitated by the installation of this medial barrier is not a basis for a claim under section 612 of the Code. Schaeffer, on the other hand, argues that the circuity of travel necessary here is a sufficiently substantial interference with access to be compensable.[5]

Case law overwhelmingly favors DOT's position that the detour required by this medial barrier is not so circuitous as to constitute a substantial or unreasonable interference with

All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

4. Our scope of review in a condemnation case is to determine whether the trial court abused its discretion, or committed an error of law or whether findings of fact and conclusions of law are supported by substantial evidence. *Department of Transportation v. Richards,* 124 Pa.Commonwealth Ct. 432, 556 A.2d 510 (1989).

5. Schaeffer also contends that the trial court should be affirmed because DOT's preliminary objections failed to follow the local rules. However, because Schaeffer did not provide a counter statement of the questions involved, he did not preserve this issue for review. Pa.R.A.P. 2116. Thus, we decline to address it.

access to Schaeffer's property and, thus, that DOT is not liable for damages under section 612 of the Code.

For instance, in *Commerce Land Corporation v. Department of Transportation*, 34 Pa.Commonwealth Ct. 356, 383 A.2d 1289 (1978), the owner of a truck terminal claimed that the construction of a medial strip restricted ingress and egress for vehicles travelling in the northbound lanes and required circuitous travel of 2.35 miles and 2.8 miles, respectively. Our court concluded that the inconvenience was not so unreasonable as to constitute a de facto taking, noting that "a *reasonable restriction* to an abutting property owner's right to access does not give rise to a compensable claim under section 612 of the Code...." *Id.* at 359, 383 A.2d at 1290–91 (emphasis in original).

In *Brill v. Department of Transportation*, 22 Pa.Commonwealth Ct. 202, 348 A.2d 451 (1975), a road widening project resulted in a change of grade in front of the property and in the installation of a medial barrier which blocked direct access to and from eastbound lanes of Route 40176 (Airport Road) and required added travel of about 3 miles for eastbound vehicles. DOT conceded liability for damages resulting from the grade change but argued that the property owner could not recover for the claimed interference with access due to the medial barrier. We held that the interference with access to the Brill property due to the medial barrier was not compensable, because a property owner's right of access extends only to the right to enter upon the highway or to leave it and have a reasonable connection to the road system.

Similarly, in *Department of Transportation v. Nod's Inc.*, 14 Pa.Commonwealth Ct. 192, 321 A.2d 373 (1974), a medial barrier restricted access so that northbound traffic was required to travel an additional 2 miles to an opening in the barrier and then 2 miles back to get to the property, and northbound traffic leaving the property had to travel one half mile to the south before turning around. We held that the

damages claimed were damnum absque injuria.[6]

*Department of Transportation v. Kastner*, 13 Pa.Common-wealth Ct. 525, 320 A.2d 146 (1974), *cert. denied*, 419 U.S. 1109, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975) involved a case where DOT constructed a bypass for traffic on Street Road, vacating the road's crossing of U.S. Route 1 and erecting a barrier there. Owners of property on what became Old Street Road sought compensation for loss of access. The sole issue before our court was whether the road relocation resulted in substantial interference with access so as to entitle the protesting property owners to compensation. Although the distance travelled to the property increased slightly, travel time may have actually decreased. Analyzing whether the property owners had stated a claim for compensation, we said

> "In essence, appellees base their claim on a belief that the change in the traffic pattern caused by the construction of the expressway and the concomitant decrease in the value of their land as a business property is compensable; they urge this Court to distinguish between properties used for business purposes and those employed as residences and contend that business establishments do have a compensable interest in the traffic pattern existing before a street has been vacated. This argument was considered and expressly rejected in *Wolf v. Department of Highways*, 422 Pa. 34, 220 A.2d 868 (1966)."

*Id.* at 531–532, 320 A.2d at 149 (1974), quoting from *Hession Condemnation Case*, 430 Pa. 273, 278–79, 242 A.2d 432, 434–35 (1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 693 (1969).

Underlying all of these cases are the holdings of two Pennsylvania Supreme Court cases, cited above: *Wolf v. De-*

**6.** "Damnum absque injuria" is defined by Black's Law Dictionary as "Loss, hurt, or harm without injury in the legal sense; that is, without such breach of duty as is redressible by an action. A loss which does not give rise to an action for damages against the person causing it." Black's Law Dictionary 354 (5th ed. 1979).

partment of Highways [7] and *Hession Condemnation Case*. In *Wolf*, our Supreme Court addressed the question of whether the Commonwealth, in the exercise of its police powers, may regulate highway traffic by the erection of medial dividers which "so divert traffic that access to the property of an owner of property abutting the highway is available by a circuitous, rather than a direct, route of travel" without becoming liable for a de facto taking. 422 Pa. at 39, 220 A.2d at 871. The case contained the following oft-repeated quote:

> Nor does the right of ingress or egress to or from one's property include any right in and to the existing public traffic on the highway, or any right to have such traffic pass by one's abutting property. The reason is that all traffic on public highways is controlled by the police power of the State, and what the police power may give an abutting property owner in the way of traffic on the highway it may take away, and by any such diversion of traffic the State and any of its agencies are not liable for any decrease in property values by reason of such diversion of traffic, because such damages are 'damnum absque injuria,' or damage without legal injury.

*Id.* at 47, 220 A.2d at 875, quoting from *State of Missouri v. Meier*, 388 S.W.2d 855, 857 (1965). In *Hession*, road improvements had resulted in the diversion or reduction in traffic going by a business. Relying on *Wolf*, the Court said "no compensable right exists in any given traffic pattern; having no right to continuation of the existing traffic pattern, appellees may not demand compensation for a change in that pattern." *Hession*, 430 Pa. at 281, 242 A.2d at 436.

Schaeffer, referring us to two recent cases in which we found DOT liable for damages under section 612 of the Eminent Domain Code, argues that the medial barrier is a de facto condemnation for which compensation must be paid. In *Department of Transportation v. Richards*, 124 Pa.Commonwealth Ct. 432, 556 A.2d 510 (1989), DOT had repaved and

---

7. *Wolf* arose prior to the enactment of the new Eminent Domain Code in 1964. However, the legal principles stated in *Wolf* remain applicable. *Hession Condemnation Case, Kastner, Nod's.*

changed the grade of Route 131, creating a "trough" which made it difficult if not impossible for a westbound car on Route 131 to make a right turn into the driveway of Richards property without scraping the bottom of the car.[8] Eastbound traffic making left turns, however, had full ingress and egress to the property. Our court determined that the maneuvers necessary to turn onto the property from the right lane constituted substantial impairment of access as a matter of law.

The repaving in *Richards* had apparently created a situation where the property could only be accessed from a 90 degree angle. Thus, traffic on the same side of the road as the property had trouble making the turn, but traffic approaching on the opposite side of the road could achieve an angle sufficient to make the turn. Although superficially similar, *Richards* differs from the case before us in two significant respects. First, *Richards* is not a medial barrier or change in traffic pattern case. Second, here, Schaeffer's property *can* be accessed from the road abutting it by making a righthand turn, but cannot be accessed from the other side of the road. In *Richards*, the question was whether DOT's activities had substantially interfered with access, not whether a change in traffic patterns had caused unreasonable circuity of travel.

The second case relied upon by Schaeffer, *Department of Transportation v. Guyette*, 103 Pa.Commonwealth Ct. 402, 520 A.2d 548, *appeal denied*, 516 Pa. 644, 533 A.2d 714 (1987), is a medial barrier and circuity of travel case. There, we determined that a medial barrier on a highway, which resulted in a 7.45 mile detour for 18 wheel trucks, was so circuitous as to constitute an unreasonable interference with access.

Unlike the situation in *Richards*, and like that in the cases cited by DOT, Schaeffer still has direct access from the lanes of traffic abutting his property. The change in accessibility is similar to that which would occur if DOT had instituted one-

8. In addition, right turns onto the property required maneuvers which were unsafe (pulling into oncoming traffic and then swinging toward the property to approach the driveway from more of a right angle) or resulted in trespass on neighboring property.

way traffic patterns. In addition, unlike *Guyette*, and like *Commerce Land Corporation, Brill* and *Nod's*, the 1.2 and 1.3 mile detours required by this barrier are not so circuitous as to be a substantial or unreasonable interference with access. Thus, our review of this record and the applicable case law convinces us that DOT is correct. DOT's preliminary objections should have been sustained.

Accordingly, we reverse and remand.

## ORDER

AND NOW, this 11th day of May, 1994, the order of the Court of Common Pleas of Berks County, dated April 7, 1993, is reversed and this case is remanded to the trial court with directions to sustain the Preliminary Objections of the Commonwealth of Pennsylvania, Department of Transportation and to dismiss the Complaint for Just Compensation and Petition for Appointment of Viewers.

Jurisdiction relinquished.