## In re CONDEMNATION BY the DELAWARE RIVER PORT AUTHORITY.

## Appeal of DELAWARE RIVER PORT AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 1995.

Decided Nov. 30, 1995.

Frederick P. Santarelli, for appellant.

Mark A. Lublin, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

This case presents a very interesting question in the area of eminent domain law in

Pennsylvania. The question is simply stated, but the solution presents difficulties.

The question is whether an abutting property owner, or one in the position of an abutting owner, may recover condemnation damages when the erection of sound barriers on a highway obstructs the view from the highway of a billboard erected on the property. The importance of the question is obvious in view of the recent increase in the use of sound barriers and the probability that many of them will interfere with the view of billboards.

The Delaware River Port Authority (DRPA), which owns and maintains the Walt Whitman Bridge and the roads approaching the bridge in Philadelphia, erected sound barriers on those roads. The sound barriers totally obstructed the view of a billboard owned by Interstate Outdoor Advertising, Inc. (Interstate) until it erected a new and higher sign so that the view is now only partially obstructed by the sound barriers.

Interstate filed a petition for the appointment of a board of view, seeking damages because, it contends, DRPA engaged in a *de facto* condemnation by erecting sound barriers that block the view of its billboard. DRPA filed preliminary objections, which were overruled by the Philadelphia County Court of Common Pleas. This appeal by DRPA followed.

There is one extremely well written case directly concerned with the subject of this case. It is *In re Condemnation by Pennsylvania Turnpike Commission*, 3 D. & C. 4th 653 (1989), which held that erecting a sound barrier that interfered with the view of a billboard was such an interference with a property right that compensation must be paid. Interstate relies heavily on that case and its reasoning. The trial judge in that case concluded that blocking the view was the taking of a property right. He said:

> We have no difficulty in finding a constitutionally protected property right in the condemnee in these billboards. It is undeniable that a direct taking by the condemnor of the properties on which the billboards were placed would constitute a tak-

ing under the Eminent Domain Code, and the commercial value of the billboards would constitute a relevant consideration in determining just compensation. Compare Appeal of Northeast Outdoor Advertising, Inc., 69 Pa.Commw. 545, 452 A.2d 81 (1982). That being the case, we believe it is inescapable that a deprivation of the property right of utilization of these same billboards by a non-appropriative action on the part of the condemnor likewise constitutes a compensable injury.

*Id.* at 657–658.

We do not agree that the answer is as simple or the conclusion so inescapable as the court in that case determined, because it is not true that every interference with an abutting property owner is compensable in eminent domain. This case involves the unique situation where the alleged interference occurred without any direct encroachment onto Interstate's land or without the setting into motion of any force that resulted in an encroachment on the actual property of the abutting property owner. It also involves an improvement to the highway, which we must assume was for the public good. This case does not involve the question of access, which, contrary to Interstate's argument, makes it clearly distinguishable from *Jackson Gear Co. v. Commonwealth of Pennsylvania, Department of Transportation*, 657 A.2d 1370 (Pa.Cmwlth.1995) ("the right of access, or ingress or egress, to an abutting highway is a property right which cannot be taken without compensation").

We recognize at the outset the doctrine of *de facto* takings and DRPA's power of eminent domain. We also recognize that there must be an expansion of such a doctrine to keep pace with the increased activities of government, and that there does not have to be an actual physical taking for the destruction of a property right of a property owner to entitle him or her to compensation. *Borough of Boyertown Appeal*, 77 Pa. Cmwlth. 357, 466 A.2d 239 (Pa.Cmwlth.1983). However, in the interpretation of what is and what is not a compensable taking,[1] we must

---

1. There is no litmus formula to determine when government action will be deemed to have the

take great care to determine precisely what right, if any, of the property owner is the subject of the claim of destruction or interference.

Interstate contends that the erection of the sound barriers constituted an effective taking of its property rights in its billboards. If Interstate is correct, we would agree that this case presents a proper case for a board of view and that, accordingly, the trial court correctly decided this matter. However, we do not agree that a property right in the billboards was taken.

■ The only "right" that was taken in this case was the "right," if it is one, to have the sign viewed by traffic on the approach to the bridge and the bridge itself. We have therefore examined the case law to resolve whether the abutting property owner has a right to have his sign viewed by the traffic on the approach to and from the bridge, so that any *de facto* taking of that right entitles the owner to compensation. We conclude that the property owner does not have such a right.

Although there are no cases directly on point other than the one cited above, several cases of the Pennsylvania Supreme Court point us to a definitive determination in this case, because they are analogous to this case and explain the rights of the abutting property owners and the reasons their damages are limited.

In *Wolf v. Commonwealth of Pennsylvania, Department of Highways,* 422 Pa. 34, 220 A.2d 868 (1966), the Supreme Court had before it abutting property owners who operated a gas station and a motel. The owners filed a claim for damages when an improvement in a highway made access to their property more difficult. The Court said:

> In this area of the law certain principles are well settled . . . [I]n the regulation of traffic and in the interest of public safety, the Commonwealth, acting within the scope of its police powers, may make reasonable rules and regulations which may

dilute or diminish the rights of abutting property owners without liability to respond in damages. The theory is that, in such field, the interest of the abutting property owner must be subordinated to the interest of the public at large.

*Id.* at 39–40, 220 A.2d at 871. The Court also stated:

> One commentator has aptly stated: " . . . what [the property owner] is losing, in fact, is the benefit—entirely unearned by him—to his land of the commercially exploitable proximity of heavy traffic. Since he has no right to this benefit and has done nothing to create it, he should have little cause to complain at losing it." Covey, "Frontage Roads; To Compensate or Not to Compensate", 56 N.W.U.L.Rev. 587, 599 (1961).

*Id.* at 46, 220 A.2d at 874.

The Supreme Court reaffirmed *Wolf* in *Hession Condemnation Case,* 430 Pa. 273, 242 A.2d 432 (1968), *cert. denied,* 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 693 (1969). In *Hession,* the Court held that the fact that an elevated highway transformed what was a heavily travelled highway into a street with only local traffic did not entitle the owner of a restaurant to condemnation damages. The Court based its conclusion on holdings in previous cases that an abutting property owner on a public highway has only the right to ingress and egress. Particularly appropriate to the case before us are the following statements that the Court quoted with approval:

> Nor does the right of ingress or egress to or from one's property include any right in and to the existing public traffic on the highway, or any right to have such traffic pass by one's abutting property. The reason is that all traffic on public highways is controlled by the police power of the State, and what the police power may give an abutting property owner in the way of traffic on the highway it may take away, and by any such diversion of traffic the State and any of its agencies are not liable

---

effect of taking. It has remained for the courts to provide, with case by case development, the needed doctrinal elaboration. *Berk v. Commonwealth, Department of Transportation,* 168 Pa. Cmwlth. 560, 651 A.2d 195, 198 (1994) (citing

*Filbert Limited Partnership Appeal,* 64 Pa. Cmwlth. 605, 441 A.2d 1345 (1982) and *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

for any decrease of property values by reason of such diversion of traffic, because such damages are 'damnum absque injuria," or damage without legal injury.

*Id.* at 279–280, 242 A.2d at 435 (citation omitted).

Recently, this Court had occasion to resort to this principle again and quoted the same passage in determining that the erection of a median barrier which eliminated left turns in an intersection did not effect a *de facto* taking of a business property situated at the intersection. *Appeal of Commonwealth, Department of Transportation,* 164 Pa.Cmwlth. 81, 644 A.2d 1274, 1276 (Pa.Cmwlth.1994), *petition for allowance of appeal denied,* 540 Pa. 605, 655 A.2d 993 (1995).

Interstate makes an additional argument that requires an answer. Interstate cites the following statute:

§ 2718.109. Compensation for removal of outdoor advertising devices

(a) Just compensation shall be paid upon the removal of any outdoor advertising device (1) lawfully in existence on the effective date of this act; (2) lawfully on any highway made a part of the interstate or primary system on or after the effective date of this act; or (3) otherwise lawfully erected on or after the effective date of this act.

(b) Just compensation shall consist of payment for (1) the taking from the owner of an outdoor advertising device of all right, title, leasehold and interest in such outdoor advertising device, and (2) the taking from the owner of the real property on which an outdoor advertising device is located of the right to erect and maintain such outdoor advertising device.

Section 9 of the Act of December 15, 1971, P.S. 596, 36 P.S. § 2718.109.

█ It reasons from this statute that it has property rights in the billboard and must be compensated. This argument fails because DRPA did not engage in "the removal of [an] outdoor advertising device." DRPA's action interfered only with the view of the sign and, as we have outlined above, Interstate had no property right in the view either from or to its sign.

Stated another way, we conclude that, just like the restaurant owner in *Hession* or the gas station and motel owners in *Wolf,* who were held to have no compensable interest in the traffic patterns existing before the change in those patterns, Interstate has no compensable interest in the view of its signs by the vehicles passing by on the Walt Whitman Bridge or its approaches.

Based on the foregoing discussion, the trial court's order is reversed.

### ORDER

AND NOW, this 30th day of November, 1995, the order of the Court of Common Pleas of Philadelphia County, at October term 1990, No. 1358, dated January 26, 1995, is hereby reversed.