Clementine W. Apple *v.* City of Philadelphia, Appellant.

Argued October 1, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*Glenn C. Mead,* and with him *William J. Graham, John M. Hutchinson,* Assistant City Solicitor, and *Augustus Trask Ashton,* City Solicitor, for appellant.

*Michael F. Donnelly,* for appellee.

OPINION BY TREXLER, P. J., December 11, 1931:

This suit arises out of the abolition of a grade crossing. Ridge Avenue at the scene of the improvement ran approximately north and south and passed in succession at right angles the following intersecting streets: Osborn, Kalos and Sumac and further on crossed at grade the Reading Railroad. The situation may be visualized if we bear in mind the order in which these streets intersect Ridge Avenue. Plaintiff's house was at the southeast corner of the Kalos Street intersection. In making the improvement, Ridge Avenue was deflected to the west at Osborn Street forming a bow and crossing the railroad overhead, and the portion of Ridge Avenue south of Sumac Street was closed and the grade crossing abolished. The name of Ridge Avenue, south of Osborn, was changed to Rochelle Avenue, which bearing southeastwardly continued beyond Sumac Street and joined the system of streets of Wissahickon, which section lies between Ridge Avenue and Fairmount Park and is largely built up. The streets above named running east terminate in a dead end at the park, but there are intersecting streets running north and south, none however affording a direct route to the center of the city.

Where a new section of the street, replacing part of the old street vacated and connecting with the same general system of city streets, makes it necessary to travel a short distance farther to and from the property in suit, in order to reach the center of the city can any damages be recovered? In the light of the decisions to which reference is made later, we would answer the question in the negative.

The appellee attempts to sustain the plaintiff's case by claiming that in closing a portion of Ridge Avenue, the "vehicular traffic has been diverted and her property placed on a side street—a cul-de-sac." The assumption that the improvement places the plaintiff's property in a cul-de-sac has no foundation in fact. The court in its opinion refusing judgment n. o. v. admits that to call the result of the improvement a cul-de-sac would not be strictly accurate. It is not a cul-de-sac in any sense of the word, although it was so named by a witness. The plaintiff has the same connection with the streets to the east of her as she had heretofore. As already stated, she has an outlet to the south through Rochelle Avenue to a system of streets leading over to Wissahickon. That there is a dead end at Fairmount Park a half mile away, does not affect the question in the least. There is a whole system of streets between the plaintiff's property and Fairmount Park. Rochelle Avenue, following the court's own language, continues "for a distance southeastwardly somewhat parallel to the railroad right-of-way, thence turning eastward, thence northward, thence northeastward, to a junction with Henry Avenue, bordering Fairmount Park." The only result of the improvement is that the plaintiff, instead of going directly across the railroad track, must go back, northeastwardly, 200 feet and turn the corner in order to get to the center of the city. This inconvenience is shared by everyone in that section. If one wants to come in from Wissahickon and if his nearest route is along Rochelle Avenue, instead of turning at Sumac Street to the left and going over the old grade crossing, he has now to do just as the plaintiff must, he must go out of his way, (approximately 300 feet) and take the route of the overhead crossing.

In every case involving the abolition of a grade crossing and the substitution of a new crossing at

some other location, the distance to be traveled from some properties on one side to those on the other side of the railroad must necessarily be increased.

In Rzasa v. P. S. C., 102 Pa. Superior Ct. 317, the plaintiff prior to the improvement had one means of access to the state highway. After the improvement was made, he still had one, but it was longer by approximately half a mile and this court held that he was not entitled to damages. The cases cited by Brother GAWTHROP who wrote the opinion in that case fully sustain the conclusion reached. He refers to the case of Spang & Co. v. Com., 281 Pa. 414, where Justice KEPHART said: "Every slight inconvenience cannot be compensated in damages. The inconvenience here suffered was the same in kind and no greater in degree than could be claimed by all persons in that vicinity having occasion to use the street ...... The underlying principle is that damages will not be allowed where the effect of the disturbance to the highway is merely to cause the owner to travel a short distance farther in order to reach the system of streets in that direction." The other cases cited are: Hedrick v. Harrisburg, 278 Pa. 274, 279; Holmes v. P. S. C., 79 Pa. Superior Ct. 381; Edgemont Street, 66 Pa. Superior Ct. 142; Ruscomb Street, 30 Pa. Superior Ct. 476, and 33 Pa. Superior Ct. 148.

In re: Mellon Street, 182 Pa. 397, and the line of cases following it, relied upon by the appellee have no application because in these cases the parties were actually left in a cul-de-sac, or owing to particular existing circumstances, the property affected suffered peculiar damages and was practically isolated. In the case before us, as we said before, such is not the case. The property still is on a thoroughfare affording access from both sides. The only harm, if any done to her, is that the road which furnished the one approach which she had to the city has been taken away and

another one substituted for it. It is a little longer and requires a slight detour. We think the cases before referred to cover the present one exactly and that further discussion is unnecessary.

The judgment is reversed and is here entered in favor of the city.