## Hession Condemnation Case.

274

Argued January 16, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused June 26, 1968.

*George R. Specter,* Assistant Attorney General, with him *Robert W. Cunliffe,* Assistant Attorney General, *John R. Rezzolla,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellant.

*Barnie F. Winkelman,* with him *Emanuel A. Romm,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, May 21, 1968:

Appellees are owners of real estate located on the northwest corner of the intersection of Longshore Street

and State Road in the City of Philadelphia. Their parcel of land contains a building used partially for residences and partially for the operation of a combined tavern-restaurant. That portion of the real estate not occupied by the structure is used by the patrons of the business as a parking lot. In 1961 the Commonwealth vacated State Road south of Longshore as part of its construction of the Delaware River Expressway. This vacation converted the intersection of Longshore and State from a full cross-intersection to a "T" intersection with State Road now ending at Longshore. The new State Road, as now located, is some 300 feet east of the old State Road and traverses an elevated overpass above Longshore Street. Appellees' access to Longshore Street and that portion of old State Road north of Longshore has not been in any way impaired by the Commonwealth's action; new State Road can be reached by traveling a short distance along Longshore. None of their property has been taken.

Pursuant to the Eminent Domain Code, Act of June 22, 1964, P. L. 84, §101 et seq., 26 P.S. §1-101 et seq. (Supp. 1967), appellees petitioned for the appointment of viewers to assess damages allegedly sustained as a result of the vacation of State Road south of Longshore and the construction of the new State Road. The board of viewers made an award of $20,000. In accordance with §516 of the Eminent Domain Code, 26 P.S. §1-516 (Supp. 1967), the Commonwealth appealed the report of the viewers and, under subsection (4) of that section, objected specifically to the awarding of any damages contending that as a matter of law no compensable damages had been proven. The common pleas court found that appellees had sustained compensable damages and awarded a jury trial to determine the amount. From that order the Commonwealth has appealed.

## I.

The opinion of the court below discusses at some length the appealability of its order. Although no motion to quash has been filed, this question merits our attention. Section 523 of the Eminent Domain Code, 26 P.S. §1-523 (Supp. 1967), provides: "Either party may appeal to the Supreme or Superior Court as the case may be, from any final order or judgment of the court of common pleas. . . ." The term "final order" is defined in §517, 26 P.S. §1-517 (Supp. 1967): "All objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily. The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report shall constitute a final order." Since §517 further requires that the trial court must make its own determination (unless a jury trial has been demanded) of the amount of damages, the action of the court below in confirming the viewers' decision as to compensability was the most it could do. If the word "confirm" in §517 is to be given content, then the action of the court below was a confirmation of the viewers' action. Section 517 tells us that such a confirmation is a final order and §523 allows appeals from all final orders.

In *Dacar Chemical Products Company v. Allegheny County Redevelopment Authority*, 425 Pa. 343, 228 A. 2d 778 (1967) we held that a lower court order which remanded the matter to the viewers was appealable under §523. It would thus seem mandated that an order which leaves open only the issue of the amount of damages is also appealable. We well realize that the Legislature has created a situation where what would traditionally be an interlocutory order is appealable. However, the language of the Eminent Domain Code

requires that we entertain this appeal and we thus turn to the question of compensability.

## II.

Appellees contend that their right to compensation can be found in either §612 or §613 of the Code. Section 612 provides for damages where an abutting owner is injured by a change of grade, an interference with access or a diminution of surface support. Section 613 deals specifically with the vacation of public roads: "Whenever a public road, street, or highway is vacated, the affected owners may recover damages for any injuries sustained thereby, even though no land is actually taken." We are convinced that neither section supports appellees' right to compensation, for we believe that whatever damages are permissible in this litigation under §612 are also subsumed under the more general language of §613 and that, under §613, no compensable damages have been demonstrated.

Although §613 speaks in terms of damages "for any injuries" sustained by an owner affected by the vacation of a street, the Joint State Government Commission comments appended to §613 state that the section's purpose is to place the Commonwealth on a parity with all other condemnors and that the section does not broaden the extent of liability for vacation of streets existing before adoption of the Code. See Joint State Government Commission, 1964 Report—Eminent Domain Code at 44-45. The Commissioners give as an example of the extent of liability *In re Melon Street,* 182 Pa. 397, 38 Atl. 482 (1897). *Melon* tells us that the question to be posed is whether the affected owner has suffered an impairment of access to his property. Access, in turn, has been defined by our cases to be the right of ingress and egress. See, e.g., *Breinig v. Allegheny County,* 332 Pa. 474, 2 A. 2d 842 (1938). It

278.

is undisputed that in three of the four possible directions of travel from appellees' property access has in no way been impaired for the streets going East, West and North remain as before. Only the Southern route has been changed by the vacation of old State Road and the construction of an elevated highway some 300 feet east. However, appellees can reach the elevated highway by traveling a few blocks to one of the entrances to the expressway. Our cases are legion that, where the result of a condemnor's action is to compel the allegedly affected property owner to travel a short distance farther to reach the system of streets going in a specific direction, this slight inconvenience is not compensable. See, e.g., *Spang & Co. v. Commonwealth,* 281 Pa. 414, 126 Atl. 781 (1924); *Department of Highway Appeal (Mitchell Condemnation Case),* 209 Pa. Superior Ct. 288, 228 A. 2d 53 (1967).

The record before the viewers makes it evident that the damage suffered by appellees is a product of the fact that the elevated highway has transformed what was once a heavily traveled highway (State Road) into a street which carries primarily local traffic only.[1] In essence, appellees base their claim on a belief that the change in the traffic pattern caused by the construction of the expressway and the concomitant decrease in the value of their land as a business property is compensable; they urge this Court to distinguish between properties used for business purposes and those employed as residences and contend that business es-

---

[1] Prior to the construction of the elevated highway, State Road was used to avoid heavy traffic on both Torresdale and Frankford Avenues. The testimony of appellees' two real estate appraisers makes it evident that their estimates of the damage suffered is based totally upon loss of traffic. One appraiser characterized the present location of appellees' tavern-restaurant as "inconspicuous" while the other stated that the elevated highway had destroyed all "profitable use" of the premises.

tablishments do have a compensable interest in the traffic pattern existing before a street has been vacated. This argument was considered and expressly rejected in *Wolf v. Department of Highways,* 422 Pa. 34, 220 A. 2d 868 (1966).

The Wolfs owned a gasoline station and motel located on the North side of Route 11, a three lane highway passing through Cumberland County. The Commonwealth decided to widen Route 11 in the process of which a medial strip was added. This strip in no way affected the access of westbound traffic to the Wolf property but it did require the eastbound lane of travel to progress some distance along Route 11 before entry could be made to the Wolf gas station-motel complex. Recognizing that the Wolfs were in essence claiming that a change in the traffic pattern on Route 11 had decreased the value of their business property, we stated the issue posed as "whether the Commonwealth may regulate the direction of traffic on a highway by the location thereon of medial dividers the result of which location is to so divert traffic that access to the property of an owner of property abutting the highway is available by a circuitous, rather than a direct, route of travel without becoming liable for the effect of such diversion of traffic on the *after* value of the abutting owner's property."[2] (Emphasis in original.) Quoting at length from a Missouri case,[3] we held (id. at 47, 220 A. 2d at 875) : " 'Nor does the right of ingress or egress to or from one's property include any right in and to the existing public traffic on the highway, or any right

---

[2] Although the *Wolf* decision was concerned with the rights of an abutting owner, we believe that the right to compensation of an affected owner under §613 would be no greater. Furthermore, although *Wolf* was not decided pursuant to the Eminent Domain Code, §613 left existing case law untouched.

[3] *State v. Meier,* 388 S.W. 2d 855 (Mo. 1965), cert. denied, 382 U.S. 846, 86 S. Ct. 79 (1965).

280

to have such traffic pass by one's abutting property. The reason is that all traffic on public highways is controlled by the police power of the State, and what the police power may give an abutting property owner in the way of traffic on the highway it may take away, and by any such diversion of traffic the State and any of its agencies are not liable for any decrease of property values by reason of such diversion of traffic, because such damages are "damnum absque injuria", or damage without legal injury.

. . .

" 'Respondent, as an abutting property owner on a public highway, does not now *have* and has never had any other property interest in the public highway other than a reasonable right of ingress and egress, as stated. Respondent has never had a property right in the traffic, great or small, on the highway, nor a right to recover damages for a decrease in value of her premises by reason of the diversion of traffic away from her property, nor has she had a property right to have the same amount of traffic pass her property as before or to have it move in the same direction. Respondent's property right of access has never extended further than the right to enter *upon* the highway or to leave it and have reasonable connection to the public road system.' "[4]  (Emphasis in original.)

---

[4] Footnote 11 in *Wolf* could be read to indicate that a distinction should be drawn between loss of traffic occasioned by changes in an existing highway and those produced by the erection of a limited access road. To some uncertain extent a few courts may have adopted such an approach. See Cromwell, Loss of Access to Highways: Different Approaches to the Problem of Compensation, 48 Va. L. Rev. 538 (1962). However, we believe that whether the loss of patronage produced by a change in traffic pattern results from either a rerouting of an existing highway, or the erection of a new one, the problem remains the same—is the decrease in land value caused by a change in traffic pattern and the resultant business impairment compensable.

Although not directly attacking the holding of *Wolf* that loss occasioned by a diversion of traffic is not compensable, appellees impliedly question the wisdom of that decision by insisting that, if compensation is not here granted, appellees will have been unconstitutionally deprived of their property. Their argument has two basic branches: (1) when the diminution in value of property reaches a certain magnitude, compensation must be granted and (2) property may be taken in the constitutional sense despite the fact that the owners' title remains undisturbed. Taking the second branch of this argument first, it rests upon the assumption that appellees possessed a right to the traffic pattern existing prior to the vacation of State Road South of Longshore. This must be so for the cases appellees cite, cases such as *Griggs v. Allegheny County*, 402 Pa. 411, 168 A. 2d 123 (1961), rev'd on other grounds, 369 U.S. 84, 82 S. Ct. 531 (1962) (taking of airspace over home), all speak in terms of *rights* of an owner which have been impaired by a condemnor's action. Admittedly, our cases accord a right of access, but this right has not been impaired in the present case. *Wolf*, however, teaches us that no compensable right exists in any given traffic pattern; having no right to the continuation of the existing traffic pattern, appellees may not demand compensation for a change in that pattern.

The first branch of the argument, based upon the following quotation from *Wolf* (supra at 42, 220 A. 2d at 872), falls with the second: "[T]he Commonwealth, acting under the guise of its police power, cannot effect what amounts to a taking of the *rights* of abutting property owners without providing just compensation; . . . 'One fact for consideration in determining such limits [of the police power] is the extent of the diminution [of values incident to the property]. When it

reaches a certain magnitude, in most if not all cases there must be an exercise of eminent domain and compensation to sustain the act.' " (Emphasis supplied.) The Commonwealth has taken nothing from appellees (other than their alleged right to a continuation of the traffic pattern) nor has it in any way restricted appellees' use of their property. Assuming that the after value of their land is $20,000 less than before, to grant compensation for that decrease this Court must accept the proposition that each businessman has a property right in the traffic which flows by his door for it is only when an individual possesses a right that the extent of the diminution of that right becomes relevant. *Wolf* demonstrates that such a right simply does not exist.

The order of the Court of Common Pleas of Philadelphia County is reversed and the record remanded with instructions to enter judgment for the Commonwealth.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I cannot agree that, as a matter of law, appellees have suffered no compensable damages under §613 of the Eminent Domain Code. I fail to see how the majority can conclude from the record that appellees' damage is solely "a product of the fact that the elevated highway has transformed what was once a heavily traveled highway (State Road) into a street which carries primarily local traffic only". While that undoubtedly is the cause of some of appellees' damages, the record we have from the board of viewers hardly reveals that it is the only source of damage. Appellees' expert specifically testified that one of the ele-

ments of damage which he considered was "the dead ending of State Road."

I would allow appellees an opportunity to prove at trial what portion of their damages flowed from that vacation of Old State Road. *In re Melon Street*, 182 Pa. 397, 403, 38 Atl. 482 (1897), upon which the drafters of §613 relied, clearly indicates that the fact that appellees' property can still be reached from three of the four directions is not conclusive: "To draw the line between owners who may and owners who may not recover, at the point where the deprivation of access is total, is to draw it arbitrarily. The abutting owner's special right in a street as a means of access to his property is not limited to the part of the street on which his property abuts. . . . His right is the right of access in any direction which the street permits. As affecting this right, no distinction can be drawn between a partial and a total deprivation of access; the impairment of the right is a legal injury differing in degree only from its total destruction. . . ." It is entirely possible that appellees at trial could not prove any damages. *Melon* went on to say, at page 405: "To sustain the right of a claimant to compensation because of the vacation of a street it must appear that the loss results from the depreciation in value of his land because of the change in the street, and his loss must be direct and proximate, and so obvious and substantial as to admit of calculation." A slightly more circuitous route to travel does not constitute the requisite loss under the *Melon* standard. *Apple v. City of Philadelphia*, 103 Pa. Superior Ct. 458, 157 Atl. 325 (1931).

Surely the right of access includes access for patrons as well as for the owner. Cf. *Hedrick v. Harrisburg*, 278 Pa. 274, 122 Atl. 281 (1923). Access to an owner of a commercial establishment is worthless if his patrons do not also have access. This is not the

284

same as saying that appellees have a property right in the traffic on the highway, a view rejected in *Wolf v. Department of Highways,* 422 Pa. 34, 220 A. 2d 868 (1966), cited by the majority. I agree with the majority that damages resulting from the diversion of traffic to the elevated highway constitute *damnum absque injuria.* Appellees have no vested right in the traffic going past their premises. Yet they do have a right to allow all those desiring to reach their premises a reasonable opportunity to do so. If appellees can prove that the journey for patrons south of Longshore is considerably more difficult—longer or more complicated—then they should be entitled to recovery under §613.

I should also like to make one passing remark upon the appealability of the instant order. While I reluctantly concur in the majority's refusal to quash, I would not do so were the language of the statute susceptible of any other meaning. The bifurcated appeal foisted upon the courts can only be termed a judicial Hydra. Would that a Hercules could appear in the legislature to slay this monster.