In Re: Condemnation of 1315 to 1391 Washington Boulevard, City of Pittsburgh, Allegheny County, Pennsylvania. Commerce Land Corp. *v.* Commonwealth of Pennsylvania, Department of Transportation. Commerce Land Corp., Appellant.

Argued May 4, 1976, before President Judge BOW-MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-CER, ROGERS and BLATT. Judge KRAMER did not participate.

*Marvin Schreiber,* with him *Brian C. Schreiber,* and *Schreiber & Schreiber,* for appellant.

*Benjamin B. Wechsler, II,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 20, 1976:

Commerce Land Corporation (Appellant) appeals an order of the Court of Common Pleas sustaining the preliminary objections of the Pennsylvania Department of Transportation (PennDOT) to Appellant's petition for appointment of viewers brought pursuant

to Section 612 of the Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P.L. 84, *as amended,* 26 P.S. §1-612, which states:

"All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, *permanent interference with access thereto,* or injury to surface support, *whether or not any property is taken."* (Emphasis added.)

The facts as briefed by the parties can be summarized as follows.

Commerce Land Corporation has been the owner since 1951 of a stretch of property along Washington Boulevard on which stands a motor freight terminal building. The building is occupied by several companies which use various sizes of vehicles, including fifty-five foot tractor trailers. In 1974, PennDOT constructed a medial strip barrier along the center of Washington Boulevard. It begins at a point slightly south of Appellant's southerly property line and extends northward several thousand feet to the intersection of Washington Boulevard with Negley Run Boulevard, and then continues along Washington Boulevard. This barrier obviously prevents direct access to Appellant's property by vehicles traveling north on Washington Boulevard. It also prevents vehicles egressing from the property from going in a northerly direction in that they are unable to turn left upon exiting.

The law with respect to denial of ingress and egress has been extensively developed in this Commonwealth. The most concise and accurate description of an abutting landowner's right was given in *Hession Condemnation Case,* 430 Pa. 273, 280, 242 A.2d 432, 435-6 (1968), *cert. denied,* 393 U.S. 1049 (1969), when our Supreme Court stated:

"Respondent, as an abutting property owner on a a public highway, does not now have and has never had any other property interest in the public highway other than a *reasonable right of ingress and egress,* as stated . . . *Respondent's property right of access has never extended further than the right to enter upon the highway or to leave it and have reasonable connection to the public road system."* (Emphasis in original and Emphasis added.)

Further, our decision in *Department of Transportation v. Nod's, Inc.,* 14 Pa. Commonwealth Ct. 192, 321 A.2d 373 (1974), exhaustively reviewed the law in this area. In that case, we reaffirmed and adopted the law as stated in *Wolf v. Department of Highways,* 422 Pa. 34, 220 A.2d 868 (1966) (pre-Eminent Domain Code) and *Hession Condemnation Case, supra,* (post-Eminent Domain Code) and, further held that the fact that the construction of a medial barrier causes traffic either entering or exiting the abutting landowner's premises to travel in a circuitous rather than a direct route does not visit upon the abutting landowner the right to recover damages for permanent interference under Section 612, 26 P.S. §1-612. In particular, we stated:

"We recognize the difference between the six-tenths of a mile required to be traveled by reason of the medial barrier complained of in *Wolf* and the approximately four miles here [referring to the circuitous route vehicles had to travel in *Nod's* to gain entrance or exit from the subject premises]. However, the appellee's complaint that some traffic on the abutting highway must travel in circuitous fashion to reach its property remains damnum absque injuria." *Department of Transportation v. Nod's, supra,* 14 Pa. Commonwealth Ct. at 196, 321 A.2d at 375-6. (Emphasis in original.) (Parenthetical added.)

Given the law as stated, the present case seems to be one clearly controlled by *Nod's*. However, the instant case is unlike the procedural posture in *Nod's* where, following the landowner's filing of a petition for appointment of viewers, the lower court appointed a board of view which conducted hearings to discern the facts, and thereafter, filed its award of damages to which PennDOT filed preliminary objections. Here, preliminary objections were filed to the petition itself. No hearings have been convened and no award suggested by the board of view. This Court is presented with only the averments in the petition, which we must accept as true for purposes of disposing of the preliminary objections. The key averments are numbers six through ten, which state:

"6. That during 1974, Penn Dot commenced construction of a medial strip on the center line of Washington Boulevard in front of the subject premises, and thereafter proceeded with the construction of said medial strip.

"7. That the construction of said medial strip permanently and substantially interferred [sic] with the access to the subject premises by prohibiting and restricting previously existing ingress and egress.

"8. That the damage complained of hereinbelow is solely due to the construction by Penn Dot of said medial strip.

"9. That as a result of the interference to access, Petitioner has suffered injury and damage in that the special and single purpose truck terminal erected on the subject premises can no longer be ultilized as such and is now undesirable [sic] and of little or no value.

"10. That Penn Dot has made or tendered no compensation for the injury or damage sustained as aforesaid to Petitioner's property."

Appellant's prayer in this appeal is a reversal of the court below with an order of remand for trial. We shall remand for the following reason.

Both parties have briefed the factual description of the surrounding roadways and alternative routes of entry and exit. However, the facts as briefed are not properly before us. The bare allegations of the petition and preliminary objections filed in response thereto, which are properly before us, do not reveal the circuitous routes which now must be traveled by trucks entering or exiting Appellant's terminal.

The law, as set forth in *Hession, Nod's* and similar cases, makes it clear that the necessity to travel a circuitous route (at least up to four miles) will not give rise to a Section 612 damage claim. However, it is not inconceivable that there may be routes so circuitous as to indeed represent an unreasonable permanent interference with access. The case now before us may or may not be such a case, but given the lack of facts that would establish such a proposition, we are in no position to affirm the sustaining of PennDOT's preliminary objections.

Consistent with the foregoing, the record is remanded to the court below to conduct hearings upon petition and, in particular, to take evidence upon the circuitous routes necessary to be traveled with respect to ingress and egress at Appellant's terminal.