**[J-73-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**


| | | |
|---|---|---|
| IN RE: CONDEMNATION BY THE CITY OF PHILADELPHIA OF THE AIRPORT BUSINESS CENTER, TINICUM TOWNSHIP, DELAWARE COUNTY | : : : : | No. 58 MAP 2024 Appeal from the Order of the Commonwealth Court at No. 1355 CD 2021, entered on December 7, 2023, Quashing the appeal from the |
| APPEAL OF: CITY OF PHILADELPHIA | : : : : : : | Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2017-007970, entered on November 10, 2021. |
| | : : | ARGUED:  September 11, 2025 |


**<u>OPINION</u>**


**JUSTICE McCAFFERY**                    **DECIDED:  February 18, 2026**

**I.      INTRODUCTION**

Pennsylvania's Eminent Domain Code[1] sets forth the procedure by which an entity with the legal authority to condemn may take private property.  It requires parties to present their disputes about the value of the condemned property to three individuals appointed by a court, known as a board of viewers.  After the parties present their evidence, the viewers issue a report setting forth their findings, which includes a calculation of the damages suffered by the owner.

A party aggrieved by the viewers' report may file an appeal as of right from the report to the appropriate court of common pleas.  All issues raised in the appeal, "other than to the amount of the award … shall be determined by the court preliminarily."  26

---

[1] 26 Pa.C.S. §§ 101-1106.

Pa.C.S. § 518(1). In contrast, the amount of the award, which includes but is not necessarily limited to the value of the condemned property, is subsequently determined through a trial *de novo*. *See* 26 Pa.C.S. § 518(3). Section 518 also declares that a "decree confirming, modifying, or changing the [viewers'] report constitutes a final order." 26 Pa.C.S. § 518(2). Generally speaking, a final order is an order that is ripe for appellate review. *See* Pa.R.A.P. 341.

In this matter, we granted allocatur to determine what constitutes a final, and therefore appealable, order that 'confirms, modifies, or changes' a report of a Board of View pursuant to Section 518(2) of the Eminent Domain Code. For the reasons set forth below, we hold that the pre-trial order in question did not 'confirm, modify, or change' the report; rather, it made preliminary determinations under Section 518(1) which were designed to guide the parties in taking pre-trial discovery in anticipation of a trial *de novo* on the issue of just compensation. As a result, we affirm the order of the Commonwealth Court dismissing the appeal.

## II.    FACTUAL AND PROCEDURAL HISTORY

Appellees, Wilbur C. Henderson & Son, David C. Henderson Marital Trust, Ambassador II Joint Venture, Henderson-Columbia Corp., and Henderson Ambassador Associates (collectively, the Hendersons), owned a property (the Property), comprised of eight different parcels totaling approximately 140 acres, located directly across Tinicum Island Road from Philadelphia International Airport.[2] The Property is located entirely in Tinicum Township, Delaware County. In 2016, the Hendersons filed a petition for appointment of viewers alleging the City rendered the Property worthless by publicizing its interest in condemning the property for an airport expansion.

---

[2] While the parties dispute the number of acres involved, the City's Brief to this Court does not identify any dispute about the metes and bounds of the property being condemned. Thus, the City's objection is not a legal dispute, but a mathematical one.

The City denied that its actions damaged the Hendersons' interests in the Property. Nonetheless, in June 2017, the City filed its initial declaration of taking of the Property. The City filed a revised declaration in September 2017. Three months later, the trial court dismissed the Henderson's *de facto* petition pursuant to an agreement between the parties. The same order awarded the City possession of the Property conditioned on the prompt payment of estimated just compensation for the Property. The City asserts, and the Hendersons do not deny, that the City complied and subsequently took possession of the Property. *See* City's Brief at 7.

The matter then proceeded to a board of view. Beginning in August 2019, the board viewed the Property and held six days of hearings. During these proceedings, the Hendersons presented evidence that the Property could be used as a privately owned air cargo facility integrated into the airport's restricted airfield. The City vigorously disputed this possibility. The viewers issued a report (the Report) in October 2020, awarding damages in excess of $139 million. The City timely appealed to the Delaware County Court of Common Pleas.

The City's appeal identified 12 objections and 38 sub- and further secondary objections. The City requested the trial court reject the viewers' Report and remand the matter to the board, claiming the viewers applied an incorrect standard for determining the highest and best use of the Property. The City argued that the Board's award was based on speculation, since it failed to consider whether the proposed highest and best use was financially feasible for the Hendersons. The City also asserted various factual errors with the Board's highest and best use analysis. Moreover, the City claimed the Hendersons were estopped from claiming the City's actions prior to the declaration of taking affected the value of the Property since their prior *de facto* taking action was dismissed with prejudice. The City demanded a jury trial *de novo*.

Following a hearing and briefing, the court of common pleas, in November 2021, entered an order addressing the City's appeal. In its order, the court rejected the City's request for a remand to the viewers to apply the "correct" standards and burden of proof. The trial court construed the City's request as seeking pretrial rulings on the legal standard and evidentiary questions, and reasoned that a remand would be useless, given the inevitable *de novo* jury trial. The court noted that where objections presented to the court involve fact finding or mixed questions of law and fact, it would be improper for a trial court to decide such questions preliminarily solely upon briefs and oral argument. The court concluded by noting that the highest and best use of property is generally considered a question of fact — or at least a mixed question of fact and law.

The trial court "confirm[ed]" that "just compensation" is defined in [26 Pa.C.S. §] 702(a) of the Code. Trial Court Order, 11/9/2021 at 3. Further, the court noted that "fair market value" is defined in 26 Pa.C.S. § 703 and takes into consideration "[t]he highest and best reasonably available use of the property and its value for that use," among other factors. *Id.* at 3-4. Since both parties had different perspectives on the relevant and material evidence regarding the "highest and best use" of the Property, the trial court determined that in addition to "present use," Section 703 of the Code requires consideration of, among others, "[t]he highest and best reasonably available use of the property and its value for that use." *Id*. at 4.

The trial court explained that Section 703 of the Code permits consideration of the highest and best use to which the property is adapted and capable of being used, provided such use is reasonably available. *See* Trial Court Order, 11/9/2021, at 4. A use, other than the existing use, must be "reasonably available" after considering the existing improvements, the demand in the market, the supply of competitive properties for such use, the zoning, and other reasonably pertinent factors. *Id.* The trial court found

that the viewers used the correct standards of proof in determining the highest and best use of the condemned parcels, noting that the jury may hear and weigh testimony of various uses of the property, *i.e.*, industrial flex buildings and/or air cargo, or any variation thereof. It is the jury's function to weigh "the highest and best reasonably available use of the property and its value for that use, as the evidence may support." *Id*. at 4-5 (internal citation and quotation marks omitted). The court opined that it was not empowered to take these questions of fact or mixed questions of fact and law from the jury. *See id*. at 5.

The trial court overruled the City's objection regarding the highest and best use standard and concluded the other objections were either moot or mixed questions of fact and law to be resolved at the ensuing jury trial *de novo*. *See* Trial Court Order, 11/9/2021, at 5. The court directed the parties to establish a pretrial schedule and listed a pretrial conference. Other than the previously mentioned statement that it "confirm[ed] that just compensation is defined in Section 702(a)", the court decided objections raised by the City. Its order did not expressly confirm, modify, or change the Board's report. Nor did it issue a decree. Rather, it made preliminary determinations under Section 518(1) which were designed to guide the parties in taking pre-trial discovery and developing evidence for the trial *de novo*.

The City appealed to the Commonwealth Court, and the Hendersons filed a motion to quash the appeal, contending that the trial court's order was not a final order under the Code.

## III. COMMONWEALTH COURT DECISION

In an unreported opinion filed December 7, 2023, an *en banc* panel of the Commonwealth Court quashed the City's appeal. The panel recognized the Hendersons' motion to quash was premised on an assertion that the trial court's order was not

appealable because it did not explicitly or implicitly confirm, modify, or change the Board's report. Thus, the Hendersons argued the order was not a final order under the Code, because it left unresolved the highest and best use of the property, a question to be decided by the finder of fact at the trial *de novo*.

The Commonwealth Court first addressed the terms "all" and "preliminarily" in Section 518(1),[3] noting that these terms have been judicially defined over the years. *See In re City of Phila.*, 311 A.3d 56, *4 (Pa. Cmwlth. 2023) (unreported). From this jurisprudence, the Commonwealth Court observed that "all" does not mean "every." *Id*. Thus, a trial court need only decide some, not all, objections of law before the trial *de novo*. *See id*. As for the term "preliminarily," only objections of law raising questions of improper board procedures or issues determinative of the legal outcome of a board's report are required to be decided by the trial court prior to the trial *de novo*. *See id*. Remaining objections, including outstanding questions of law, questions of fact, and mixed questions of law and fact, must be resolved at the trial *de novo*. *See id*.

The Commonwealth Court explained that the issue of what constitutes highest and best use of a condemnee's property is generally considered a question of fact or, at least, a mixed question of fact and law. *See In re City of Phila.*, 311 A.3d 56 at *5 *(citing In re De Facto Condemnation & Taking of Lands of WBF Assocs., L.P.*, 903 A.2d 1192, 1210 n.14 (Pa. 2006)).

---

[3] Section 518 sets forth the procedures for addressing an appeal from a board of viewers:

**An appeal shall be disposed as follows:**

**(1) All objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily.**

(2) The court may confirm, modify or change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report constitutes a final order.

26 Pa.C.S. § 518(1)-(2) (emphasis added).

Turning to the issue before it, the Commonwealth Court commented that the trial court's order resolving objections to the viewers' report may not necessarily be an appealable order. *See City of Phila.*, 311 A.3d at *5. The Court pointed to case law suggesting the trial court must enter a decree following an order determining objections. *See id.* The panel opined that an aggrieved party may appeal from this decree or any other final order of the trial court, raising any of the objections which were adjudicated adversely to that party. *See id.* The court added that at a trial *de novo*, the trial court may rely on its prior disposition of any applicable questions of law raised in the Section 518(1) appeal of the board of viewers' report. *See id.* Further, the court noted if an aggrieved party appeals from a trial *de novo*, and elects to appeal questions of law that the Commonwealth Court had already addressed with finality in a pre-trial appeal, the law of the case or a similar doctrine may apply. *See id.* Finally, according to the panel, an aggrieved party's failure to appeal the trial court's rulings on the law to the Commonwealth Court under the Code does not bar that party from challenging the trial court's rulings in a post-trial appeal. *See id.*

The Commonwealth Court determined that, regardless of whether the trial court's order was a decree, the order did not confirm, modify, or change the viewers' report. *See City of Phila.*, 311 A.3d at *7. Instead, the order explicitly rendered "preliminary determinations," regarding elements and evidence of damages on the Property's highest and best use, which is a mixed question of fact and law. *Id.* The panel added that the trial court's "preliminary determinations" are akin to pretrial, evidentiary rulings. *Id.*

Further, even if the trial court's order was a *de facto* decree, the panel opined that the trial court's resolution of the City's numerous objections regarding the property's highest and best use were not subject to immediate appeal. *See City of Phila.*, 311 A.3d at *7. The panel noted the City's objections as to the Property's highest and best use

raise questions of fact or at least mixed questions of fact and law. *See id.* The court added that the testimony and findings challenged by the City are no longer relevant because they will be litigated anew in the trial *de novo* by an independent finder of fact. The testimony before the viewers, as well the viewers' findings and award, will be inadmissible at the trial *de novo*. *See id.* at *8. Because the parties may present evidence that is significantly different from that presented to the viewers, the trial court's evidentiary rulings could justifiably differ from those made by the viewers. *See id.* Accordingly, the Commonwealth Court granted the Hendersons' application to quash the City's appeal.

## IV. ISSUE BEFORE THIS COURT

The City timely petitioned this Court for allowance of appeal. We granted review of the Commonwealth Court's quashal:

> Did the Commonwealth Court fail to follow the express terms of the Eminent Domain Code and the Rules of Appellate Procedure, as well as controlling precedent from this Court's decision in *Commonwealth v. Hession*, 242 A.2d 432 (Pa. 1968), when it quashed an appeal as of right from a final order confirming the report of a board of viewers by relying on how the trial court labelled its order rather than the substance of the order?

Order, 22 MAL 2024, 7/30/2024.

## V. STANDARD OF REVIEW

The City argues that the trial court's order denying its objections constitutes a confirmation of the viewers' report. Thus it is immediately appealable. The question before us concerns the correct application of the Eminent Domain Code and is an issue of statutory construction. Our primary duty is to determine and apply the Legislature's intent in enacting the Code. *See Crown Castle NG East LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020). While "the best indication of legislative intent is the plain language of the statute[,]" we identify the plain meaning by considering "the statutory language in context and give words and phrases their common and approved usage." *Id*. (citations and internal quotation marks omitted). We do not read the provisions in

isolation, but instead understand each provision in the context of the entire Code. *See A.S. v. Pa. State Police*, 143 A.3d 896, 906 (Pa. 2016).

## VI.    ANALYSIS

The City argues that the trial court's order qualifies as a final, appealable order under Section 518(1) and is therefore appealable. It provides:

An appeal shall be disposed as follows:

(1) All objections, other than to the amount of the award, raised by the appeal shall be determined by the court **preliminarily**.

(2) The court may **confirm**, modify or change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report constitutes a final order.

(3) The amount of damages shall be determined by the court unless a jury trial has been demanded.

(4) At the trial of the case, the condemnee shall be the plaintiff and the condemnor shall be the defendant.

26 Pa.C.S. § 518 (emphasis added). Specifically, the City relies on paragraph 8 of the court's initial order to support its argument:

8.   This Court **confirms** that "just compensation" is defined in Section 702(a) as "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." 26 Pa.C.S. § 702(a)[.]

Trial Court Order, 11/9/2021, at 3 (emphasis added). Pursuant to the structure of Section 518 and this Court's holding in *Commonwealth v. Hession*, 242 A.2d 432 (Pa. 1968), the City asserts the trial court was required to confirm, modify, or change the report or refer it back to a board of viewers before conducting a trial *de novo*.

We disagree with the City's assertion that paragraph 8 of the order in any manner explicitly confirms the viewers' report. Nonetheless, the City's claim that the order, read

in its entirety, 'confirms' the Report has arguable merit. The correct application of Section 518(1) to the trial court's order is unclear from the text of Section 518(1) itself.

Therefore, we turn to the history of the Eminent Domain Code to understand its context. The Eminent Domain Code was first enacted in 1964. Prior to the enactment of the Code, condemnation proceedings were governed by a multitude of disparate statutes. *See*, *e.g.*, *Lower Chichester Tp. v. Roberts*, 162 A. 460, 461 n.1 (Pa. 1932). Under these various statutes, when a board of view's report was filed in the appropriate court of common pleas, the prothonotary was directed to mark the report "confirmed *nisi*." *See* 26 P.S. § 1-515 (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34) (Original Section 515), *Comment*. If no party objected within 30 days, the prothonotary was directed to "enter a decree confirming the report absolutely." *Id.*[4]

Parties generally were required to raise questions of law regarding the board's report *via* exceptions. *See Kellman Trust v. Com., Dep't of Transp.*, 354 A.2d 583, 590 (Pa. Cmwlth. 1976) (*en banc*). "Thus, questions of procedure, including illegalities in the proceedings, and other questions of law which should be disposed of preliminarily by the court," were addressed through exceptions. *Petition of Redev. Auth. of City of Bethlehem*, 205 A.2d 629, 632 (Pa. 1964). In contrast, "issues of fact such as what constitutes the proximate cause of damages and their extent, and the amount of the damages to be awarded," were to be raised through an appeal to the court of common pleas and resolved by a jury through a trial *de novo*. *Id*.

---

[4] Both the original and modern Code eschew the decree *nisi* procedure. Instead, the Code requires the viewers to notify the parties of the viewers' intent to file the report ten days prior to filing. *See* 26 P.S. § 1-513 (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34); 26 Pa.C.S. § 514(b). If no appeal is filed within 30 days, the report becomes "final as of course" and "constitutes a final judgment." 26 P.S. § 1-515 (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34); 26 Pa.C.S. § 516(a)(3).

While this dichotomy is simple to describe, it was difficult to apply. "Because of the great amount of difficulty encountered by litigants, counsel, and courts in differentiating between the procedural and substantive aspects of contests, many litigants were often, by mischance, deprived of their opportunities to test meritorious claims in the courts of this Commonwealth." *Kellman Trust*, 354 A.2d at 590. "The General Assembly recognized the inequity of this situation and therefore sought," through the enactment of the Eminent Domain Code, "to preserve an appellant's right to a new trial regardless of the manner in which he was to bring the contest to the viewer's report." *Id*. at 590-591. Thus, one purpose of the Eminent Domain Code was to simplify "the variety of appeal procedures once employed in the various separate statutes that concerned condemnation in the Commonwealth." *Id*. at 590; *see also* House Resolution No. 59 of 1959 ("Resolved (the Senate concurring), That the Joint State Government Commission be directed to study and investigate exhaustively the law and procedure relating to the exercise of the right to condemn property for public purpose in Pennsylvania … with the view toward proposing a complete revision and codification thereof into one statute in order to eliminate present inconsistencies, produce uniformity in practice and procedure, assure just and equitable treatment between all interested parties and in general improve the administration of justice in this field of law.")

As originally enacted in 1964, the Code provided a right to appeal from the viewers' report to the appropriate court of common pleas. *See* Original Section 515. "The appeal shall raise all objections of law or fact to the viewers' report." *Id*. If no appeal was taken from the report within 30 days, the report's award became final and constituted "a final judgment." *Id*.

An appellant was required to list all "[o]bjections … other than to the amount of the award" in its appeal. *See* 26 P.S. § 1-516 (enacted June 22, 1964, P.L. 84; renumbered

by Act No. 2006-34) (Original Section 516). Thus, a challenge to the amount of the award was implicitly recognized, while all other challenges needed to be listed so they could be preserved and properly raised on appeal. Importantly, the *Comment* to Original Section 516 noted that "'[o]bjections' is not intended to mean objections to rulings on evidence, competency, etc.; it means objections to the report." *Id*. *Comment*.

Under the original Code, the court was required to "determine[]" all objections, "other than to the amount of the award … preliminarily." 26 Pa.C.S. § 517 (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34) (Original Section 517). Unless a jury trial was demanded, the court was required to "determine[]" the amount of damages. *Id*.

This history suggests that the Commonwealth Court was correct in concluding that "all objections" is not equivalent to "every objection." Instead, under Original Section 517, "all objections" was intended to cover all objections to the report, and did not include objections to rulings on evidence, competency, or other issues that were more appropriately addressed at the trial *de novo*. Since the General Assembly re-numbered, reorganized, and amended the Code thoroughly, but did not change this language, there is no indication that it intended to change this understanding of what constituted a final order under the Code.

The City disputes this understanding. It contends that in *Hession*, this Court required immediate appellate review of orders even if the order does not explicitly confirm the viewers' report. In *Hession,* the Commonwealth vacated a portion of old State Road in North Philadelphia. *See Hession*, 242 A.2d at 437. That action converted an intersection of old State Road from a four-way intersection into a "T" intersection, with old State Road ending at the southern end of the intersection. *See id.* Owners of a mixed commercial/residential property at the Northwest corner of that intersection filed a petition seeking the appointment of viewers to assess damages they claimed to have suffered as

a result of the vacation of old State Road. *See id.* After the viewers awarded the owners $20,000, the Commonwealth filed an appeal to the court of common pleas asserting that, as a matter of law, the owners could not prove a compensable injury since the property was not the subject of a *de facto* condemnation. *See id.* The trial court concluded that the owners "had sustained compensable damages and awarded a jury trial to determine the amount." *Hession*, 242 A.2d at 433. The Commonwealth appealed from that order to this Court.[5]

Although the owners did not file a motion to quash, this Court addressed the appealability of the order *sua sponte*. *See Hession*, 242 A.2d at 433. The Court noted that Original Section 517 required the court to determine "[a]ll objections, other than to the amount of the award, raised by the appeal … preliminarily." *Id.* The *Hession* Court concluded the order was appealable since it confirmed the board's conclusion that a taking occurred:

> Since section 517 further requires that the trial court must make its own determination (unless a jury trial has been demanded) of the amount of damages, the action of the court below in confirming the viewers' decision as to compensability was the most it could do. If the word 'confirm' in section 517 is to be given content, then the action of the court below was a confirmation of the viewer's action. Section 517 tells us that such a confirmation is a final order[.]

*Id*.

It is important to note that this specific issue is no longer one that can be decided by a board of viewers. Then, as now, owners were required to file a petition for appointment of viewers alleging they had suffered a compensable injury despite there being no formal declaration of taking. *See* 26 P.S. § 1-502(e) (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34) (Original Section 502); 26 Pa.C.S. § 502(c)(1).

---

[5] The appeal in *Hession* pre-dated Pennsylvania's 1968 Constitution, which established the Commonwealth Court. *See* PA.CONST. art. V, § 4.

Now, however, Section 502(c) directs the **court** to "determine whether a condemnation has occurred," the date of any undeclared condemnation, and "the extent and nature of any property interest condemned" in the absence of a declaration of taking. 26 Pa.C.S. § 502(c)(2).

In contrast, Original Section 502 did not direct the court to make any determinations of law when a reverse-taking was alleged in a petition for appointment of viewers. Indeed, the original Code was silent as to who was to determine whether an undeclared condemnation occurred, the extent of the taking, or the nature of the property interest condemned. The original Code merely required the viewers' report to determine "[t]he date of the … injury where no declaration of taking has been filed." 26 P.S. § 1-511 (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34) (Original Section 511).

Conversely, the modern Code omits any requirement for the viewers to determine the date of a reverse taking. *See* 26 Pa.C.S. § 512. This omission is consistent with current Section 502(c)'s command that the court of common pleas make that determination.

*Hession* is thus distinguishable both on the facts and the law. It is distinguishable on the facts as it addressed a reverse condemnation scenario, where no formal declaration of taking had been filed. While the Hendersons initially filed a petition alleging a reverse condemnation, that action was withdrawn or merged into the present case when the City filed a formal declaration of taking. In other words, the specific relevant holding of *Hession* — the court's confirmation of the viewers' determination that a taking had occurred was immediately appealable — is irrelevant to this appeal, as the viewers here made no such determination, nor were they (or the Court of Common Pleas) required to do so by virtue of the City's formal declaration of taking.

Similarly, *Hession* is distinguishable on the law, as Section 502 no longer permits a board of view to determine whether an undeclared taking has occurred. Accordingly, courts are no longer in the position of "confirming" such determinations of viewers preliminarily, even when that factual issue is properly raised. Thus, the City's reliance on *Hession* is misplaced.

The legislative and jurisprudential history of the Code also undercut the City's position. As noted previously, both the Original Code and the current Code require an appellant to identify "[o]bjections, if any, to the viewers' report, other than to the amount of the award." Original Section 516(4); 26 Pa.C.S. § 517(a)(4). Similarly, both versions of the Code provide that, upon an appeal, the damages awarded by the viewers are immediately vacated. Either the court or a jury is to determine the damages *de novo*.[6] *See* Original Section 516(5); 26 Pa.C.S. § 517(a)(5), (b)(2). Indeed, in both versions of the Code, "the report of the viewers and the amount of their award shall not be admissible as evidence" at the trial *de novo* on appeal. 26 P.S. § 1-703(3) (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34) (Original Section 703); 26 Pa.C.S. § 1103(3). And both Codes provide that the viewers are not bound by formal rules of evidence, other than those imposed by the Eminent Domain Code itself. *See* 26 P.S. § 1-701 (enacted June 22, 1964, P.L. 84; renumbered by Act No. 2006-34) (Original Section 701); 26 Pa.C.S. § 1101.

These consistent provisions of the Code reinforce the *Hession* Court's observation that "confirming the viewers' decision as to compensability was the most [the court of common pleas] could do" preliminarily, or **prior** to holding a trial *de novo*. *Hession*, 242

---

[6] Of course, the parties may always "agree upon all or any part or item of damages" and remove such issues from the trial *de novo*. *See* 26 Pa.C.S. § 501. This provision of the Code has remained virtually untouched over the years. *See* 26 P.S. § 1-501 (enacted June 22, 1964, P.L. 84).

A.2d at 433. In other words, the only issue either party could appeal prior to trial *de novo* was whether a taking had occurred — all other objections, including any objections about how damages were calculated, could be addressed only at or after the trial.

This Court made the point explicit shortly thereafter, by reinforcing that under the Code, a trial *de novo* on appeal "is conducted without reference to" the proceedings before the viewers. *Stoner v. Metropolitan Edison Co.*, 266 A.2d 718, 722 (Pa. 1970). Thus, neither party is "obliged to duplicate, at trial, the entire case before the viewers, and remain[s] free to replace a [prior] witness … or eliminate prior witnesses altogether." *Id*. (footnote omitted). As a result, evidentiary rulings made by the board of view became immaterial since a new factual record will be created at a trial *de novo* and therefore, they are not subject to preliminary appellate review.

Several years after *Stoner*, the Commonwealth Court recognized that,

[t]he word 'preliminarily' found in Section 517 describes the time reference within which the objections to the viewers' report must be settled. The General Assembly's intent was to have the [v]iewers' report settled preliminarily to the start of the trial de novo, not to require [i]nitial settling of all questions of law prior to a trial *de novo*.

*Kellman Trust Fund v. Com., Dep't of Transp.*, 354 A.2d 583 (Pa.Cmwlth. 1976) (*en banc*) (reformatted). Thus, a ruling made in a pre-trial order is not magically transformed into a final, appealable order through Section 517. *See id*. at 595 n.22. Instead, such orders are treated as interlocutory and properly raised only in the context of the new evidentiary record created at the trial *de novo*.

Since *Kellman*, the test for immediate appealability focuses on the distinction between legal issues of compensability (whether a compensable injury has been sustained) and factual issues of value (the value of any compensable injury), though the exact contours of the distinction may not always seem clear. The Commonwealth Court initially described the distinction as between questions that are "basic to the inquiry"

versus questions that involve "the amount of the award[.]"  *Hershey v. Exxon*, 342 A.2d 497, 500 (Pa. Cmwlth. 1975) (*en banc*), *overruled in part by In re Condemnation by the Pa. Turnpike Comm'n of 14.38 Acres in Fee Simple, in North Beaver Twp., Lawrence Cnty.*, 698 A.2d 39, 42 (Pa. 1997) (*Condemnation of 14.38 Acres*).[7]  The Court was clear, however, that "Section 517 requires that [t]he court preliminarily decide questions **not** involving the amount of an award."  *Id.* at 501 (emphasis added).

In 1986, the Commonwealth Court held that "appellate jurisdiction to review [orders dismissing objections to a viewers' report] should be construed very narrowly."  *In re Condemnation by Dep't of Transp., of Right of Way for Legis. Rt. 153*, 515 A.2d 102, 105 (Pa. Cmwlth. 1986) (*Rt. 153*).   The panel held that the question of whether the condemnees' use of their property was legal under applicable zoning regulations "does not relate to the extent of the [c]ondemnees' interest in the property, the extent or date of the taking or the availability of severance damages."  *Id*. at 106.  Rather, it concluded the question was one of mixed fact and law.  *See id*.  "Thus, appellate review of this question prior to its application to the expert valuation testimony to be offered at the trial *de novo* would be advisory[,]" and therefore prohibited.  *Id.* (reformatted).

Eleven years later, in 1997, this Court was asked to determine whether the application of the Assembled Economic Unit Doctrine (AEUD) was a legal issue or a

---

[7] In *Condemnation of 14.38 Acres*, this Court overruled *Hershey v. Exxon* to the extent the *Hershey* Court "allowed the trial court to engage in factfinding on remand where the parties demanded a jury trial in their appeal[.]"  *Condemnation of 14.38 Acres*, 698 A.2d 39, 42 (footnote omitted).  In the intervening years, this Court had "approved of a trial court's ruling on a mixed question of fact and law."  *Id*. at n.6 (*citing City of Chester v. Dep't of Transp.*, 434 A.2d 695 (1981)).  However, the *Condemnation of 14.38 Acres* Court distinguished *City of Chester* from *Hershey v. Exxon* as the parties in *City of Chester* "had not requested a jury trial."  *Id.*

factual issue. *See Condemnation of 14.38 Acres*, *supra*.[8]  The AEUD allows a condemnee to be compensated for various machinery and fixtures when the nature of the "condemnee's business requires a unique building for its operation and no other building within a reasonable distance is adaptable to the functioning of the business."  *Id*. at 41.  This Court observed that, under the Eminent Domain Code, the trial court on appeal rules upon "issues of law preliminarily and reserves factual issues for the jury."  *Id*. at 42.  The Court observed that the issue of the AEUD's applicability was a mixed question of fact and law.  *See id*.  Since the condemnees requested a jury trial, it was for the jury to decide whether the condemnees' "barn was unique and whether there was another property adaptable for the dairy business."  *Id*.

Shortly thereafter, the Commonwealth Court, citing *Condemnation of 14.38 Acres*, held that objections which raise questions of fact are reserved for the trial *de novo*, and are not to be decided by the trial court preliminarily.  *See McGaffic v. Redev. Auth. of City of New Castle*, 732 A.2d 663, 675 (Pa. Cmwlth. 1999).  The panel explained that "the trial *de novo* in this context is limited to the amount of the award of damages and any objections of fact which have been appropriately raised in the appeal from the viewers' report[.]"  *Id*. at 675-676.

Subsequently, in 2005, the Commonwealth Court explained that Original Section 517 "makes clear questions of *law as related to the board of viewers' report* should be settled preliminarily, with the trial court then confirming, modifying, or changing the report based on the objections."  *In re South Whitehall Twp. Auth., Lehigh Cnty.*, 873 A.2d 855, 858 (Pa. Cmwlth. 2005) (emphasis in original; citation omitted).  Nonetheless, the panel opined that where the relief sought by the appellant "relates to the manner in which the

---

[8] While the *Condemnation of 14.38 Acres* Court explicitly addressed the distinction between legal issues and factual or mixed factual/legal issues, it did not address whether the trial court order at issue there constituted a final order under Original Section 517.

trial *de novo* is to be conducted, the order is not appealable under Section 517." *Id*. (reformatted). Accordingly, the panel concluded the order at issue there was not final as it "addressed evidentiary issues for trial." *Id*.

Most recently, in an unpublished opinion, a panel of the Commonwealth Court addressed an issue similar, but not identical, to the issue currently before us. *See Quincy Twp. v. Mount Valley Riders Saddle Club, Inc.*, 222 C.D. 2019 at *4 (Pa. Cmwlth. 2020) (unreported). There, Quincy Township filed a declaration of taking of property owned by Mount Valley Riders Saddle Club (MVRSC). MVRSC previously merged with Silver Star Saddle Club, causing Quincy Township to question the identity of the true owner of the condemned property. After a hearing, the trial court determined that MVRSC was the owner of the condemned property and therefore entitled to just compensation from Quincy Township. MVRSC subsequently sought to impose delay interest damages on Quincy Township. The trial court denied delay damages, finding that MVRSC had caused the delay itself by failing to identify the proper owner of the property.

MVRSC appealed to the Commonwealth Court, contending the trial court's order denying delay damages involved a legal determination and thus constituted a final order under 26 Pa.C.S. § 518. Judge, now Justice Brobson, writing for the majority, ultimately quashed MVRSC's appeal, concluding that the trial court's order did not confirm, modify, or change the report of a board of viewers. *See Quincy Township*, 222 C.D. at *4. The panel observed that there was "no question that a taking occurred for which the [MVRSC] is entitled to compensation, and … no question as to the extent of the taking." *Id*. Since the trial court's order merely denied a request for interest, the order did not "implicate the legal questions addressed in *Hession* … which focused on the existence and extent of a compensable taking." *Id*.

Two broad propositions are consistent with this history.[9]  First, orders resolving objections that are relevant only to the **calculation** of damages, either directly or indirectly, are not entitled to immediate appellate review under Section 518(2).  In contrast, orders that address whether a purported owner has suffered an injury that is compensable are immediately appealable.  Similarly, orders that define the legal interest of an owner, or that set the date of a taking, are immediately appealable.  Indeed, as noted above, the most recent amendments to the Code have essentially mooted parts of the caselaw history, as many of the questions concerning reverse condemnations are now decided by the court prior to the appointment of a board of viewers.  *See* 26 Pa.C.S. § 502(c)(2) ("The court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned").

Second, orders dismissing objections based on issues of fact, even if mixed with legal issues, are not entitled to immediate appellate review under Section 518(2).  Pennsylvania courts have consistently denied immediate appellate review under these circumstances, noting that the lack of development of the factual record stymies any attempt at appellate consideration.

As this Court recognized over 50 years ago, "the Legislature has created a situation where what would traditionally be an interlocutory order is appealable." *Hession*, 242 A.3d at 434.  Yet, it is clear the legislature did not intend to eliminate wholesale the well-supported preference for appellate review of orders once they are final.  *See* Original

---

[9] While these two categories overlap, they are nonetheless distinct.  For example, the City raised multiple objections asserting the viewers "erred as a matter of law by failing to apply the correct standard of proof" on various issues about the Henderson's proposed uses of the Property.  The determination of the correct standard of proof is a purely legal issue — it does not require the resolution of any factual disputes.  Yet, it is only relevant to the calculation of damages suffered by the Hendersons.

Section 516, *Comment*.  The City's position in this appeal, if approved by this Court, would introduce significant delays into the litigation of eminent domain cases and waste scarce judicial resources.  The provisions in the Code which provide for appellate review of interlocutory orders must be construed narrowly and consistent with the acknowledged purpose of the Code, namely, to "produce uniformity in practice and procedure, assure just and equitable treatment between all interested parties and in general improve the administration of justice in this field of law." House Resolution No. 59 of 1959.

The lack of immediate appellate review does not insulate the issues from appellate review entirely.  Those issues, whether fact-bound or related to the calculation of damages, if properly preserved, may be addressed through the normal appellate review process after the entry of a judgment following the *de novo* trial.

With this in mind, we turn to whether the Commonwealth Court erred in quashing the City's pre-trial appeal.  We conclude that it did not.[10]  As noted above, the Commonwealth Court determined the trial court's order was unappealable for two distinct reasons.  First, the order did not confirm, modify, or change the viewers' report.  Instead, the Commonwealth Court opined that the order constituted a preliminary determination of evidentiary issues that would arise at the *de novo* trial.  *In re City of Phila.*, 311 A.3d 56 at *7.  Thus, the order was essentially a non-final pre-trial order that may be re-visited as the factual record developed.  *See id*.

---

[10] The City's first objection — whether the viewers erred in not complying with deadlines set forth in the Code for filing their report — could possibly, under different circumstances, represent an issue that was ripe for preliminary determination and interlocutory appellate review.  However, the City does not develop any explicit argument on the trial court's resolution of this objection and does not explain how its proposed remedy — a remand to the viewers — would remedy any injury it suffered by the viewers' alleged failure to comply with the Code's deadlines.  Accordingly, we conclude the City waived any claim of legal error arising from this objection.

Second, the Commonwealth Court concluded that the City's objections to the viewers' report raised mixed questions of law and fact and not a controlling issue of law, such as whether a taking had occurred, as was the case in *Hession*. Thus, the Commonwealth Court concluded the trial court was not required to determine these issues preliminarily. *See In re City of Phila.*, 311 A.3d 56 at *7. Rather, the trial court's evidentiary rulings would properly arise only in the context of a new trial where the evidence presented could differ significantly from the evidence presented to the viewers. *See id.* at *7-*8. Thus, it would be inappropriate to review these pre-trial rulings in the absence of the record developed during the trial. *See id.* at *8.

Both conclusions are consistent with the Eminent Domain Code and the precedent interpreting it. We therefore affirm the Commonwealth Court's order quashing the appeal, and remand to the Court of Common Pleas for further proceedings.

Justices Donohue, Dougherty, Wecht, Mundy, and Brobson join the opinion.

Chief Justice Todd and Justice Dougherty concur in result.